No. 56,147

SCOTT F. STANDISH, *Appellee*, v. DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION, *Appellant*.

(683 P.2d 1276)

Opinion filed July 13, 1984.

*Brian Cox*, of the Department of Revenue, argued the cause, and *William L. Edds*, general counsel, was with him on the briefs for appellant.

*Phillip Eugene Porter*, of Keenan, Mauch & Keenan, P.A., of Great Bend, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the Department of Revenue from an order of the Barton District Court reversing an administrative order suspending the driver's license of Scott F. Standish. The Department raises but one issue on appeal: whether an

initial refusal to submit to a lawfully requested chemical test of breath to determine the alcoholic content of the blood, K.S.A. 8-1001, may be "rescinded" by subsequent consent.

Sometime during the night of September 17, 1982, Standish was driving west on 10th Street in Great Bend. Officer Buczinski saw the Standish vehicle strike the curb three or four times and move back and forth between the curb and the center line. The officer stopped Standish and immediately noticed the odor of intoxicants on his breath. Standish was given a field sobriety test and failed. Next, the officer advised Standish of his rights by reading him the *Miranda* warnings. The officer then asked Standish to take a breathalyzer test. Standish responded that he would like to talk to his attorney first. The officer then placed Standish in his vehicle and took him to the Great Bend police department. Standish attempted to telephone his attorney but was unable to reach him. The officer asked him what he wanted to do and Standish said that without talking to his attorney he could not take the breathalyzer test. The officer then told him "that he might stand a chance of losing his license for some time," and Standish responded that he was sorry but he could not take a breathalyzer test without consulting his attorney first. Officer Buczinski then took Standish to the Barton County jail. Officer Buczinski left the jail and returned to duty. Within fifteen to thirty minutes Standish talked to the jailer and asked him, "Am I going to take this test or what?" And the jailer said, "It is too late now." The jailer did not call Officer Buczinski and ask him to return to the jail. The officer testified that if Standish had changed his mind while he was still in the officer's custody, he would have administered the test and would not have sent in a refusal report.

An administrative law judge found that Standish had refused to submit to a chemical breath test and suspended his driving privileges for 120 days. Upon appeal to the Barton District Court, that court, after an evidentiary hearing, held that Standish within a reasonable time rescinded his refusal to take the test, and that had the officer been made aware of this the test would have been given. The court concluded that Standish did not ultimately refuse because his initial refusal was rescinded within a reasonable time. Therefore, the order suspending his driving privileges was reversed.

K.S.A. 8-1001 provides:

"Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath or blood, to determine the alcoholic content of the person's blood whenever the person is arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of alcohol . . . . The test shall be administered at the direction of the arresting officer."

The statute continues:

"If the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given and the person's refusal . . . . shall be admissible in evidence against the person at any trial for driving under the influence of alcohol. The arresting officer shall make a report verified on oath to the division of vehicles of the refusal . . . . [I]f, after [a] hearing, the division finds that the refusal was not reasonable . . . the division shall suspend the person's license . . . for a period of not less than 120 days and not more than one year."

There is nothing within the statute regarding the right of a person so arrested to change his mind and "rescind" a refusal to take the test. We have carefully considered the arguments of the parties and cases from other jurisdictions. See, for example, *Covington v. Department of Motor Vehicles*, 102 Cal. App. 3d 54, 162 Cal. Rptr. 150 (1980); *Asbridge v. North Dakota State Highway Com'r*, 291 N.W.2d 739 (N.D. 1980); *Peterson v. State*, 261 N.W.2d 405, 410 (S.D. 1977); *Hoffman v. Iowa Dept. of Transp.*, 257 N.W.2d 22 (Iowa 1977); *Lund v. Hjelle*, 224 N.W.2d 552, 557 (N.D. 1974); and Annot., Request Before Submitting to Chemical Sobriety Test to Communicate with Counsel as Refusal to Take Test, 97 A.L.R.3d 852.

The chemical testing system provided under our implied consent law is important because it provides the best available and most reliable method of determining whether a driver is "under the influence" of alcohol. It protects both the accused and the public. A refusal to submit to the test, on the other hand, invokes serious consequences for the person arrested. We believe that the administration of the test should be encouraged and the person arrested should be given every reasonable opportunity to submit to it. For this reason, we hold that an initial refusal may be changed or rescinded, and if rescinded in accordance with the following rules, cures the prior refusal. To be effective, the subsequent consent must be made:

(1) within a very short and reasonable time after the prior first refusal;

(2) when a test administered upon the subsequent consent would still be accurate;

(3) when testing equipment is still readily available;

(4) when honoring the request will result in no substantial inconvenience or expense to the police; and

(5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest.

For example, if Standish had refused at the scene and then changed his mind and requested the test a few minutes later when he arrived at the police station, the test should have been given. Here, however, Standish did not change his mind until the arresting officer had taken him from the scene to the police station and then to the jail, and until some time after the officer had left the jail and returned to his other duties. This, under the rules laid down above, was too late. The arresting officer need not sit and wait for the person to change his or her mind, and thus neglect other duties.

A conditional response such as, "I want to talk to my attorney (or parent or relative or friend or some other third person) first," is not a *consent* to take the test. It is a refusal. See *Lewis v. Department of Motor Vehicles,* 191 Neb. 704, 217 N.W.2d 177 (1974); *Rusho v. Johns,* 186 Neb. 131, 181 N.W.2d 448 (1970); the cases cited above, and Annot., 18 A.L.R.4th 705. Standish, both at the scene of the arrest and at the station house, clearly refused to take the test.

One matter remains. The officer gave Standish the *Miranda* warnings, including the statement that "he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona,* 384 U.S. 436, 479, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966). The officer then asked Standish if he would take a breath test, and Standish responded by asking to first exercise his just-stated right to counsel. This sequence, without any further explanation, was obviously confusing to the accused.

Should the *Miranda* warnings be given in such a case? Does the accused have the right to consult counsel before deciding whether to take the chemical test? And what further advice, if any, must the officer give? Those questions remain to be answered.

As to *Miranda*, the United States Supreme Court just this month has resolved the issue. The *Miranda* safeguards apply regardless of the nature or severity of the offense for which the accused is suspected or arrested. Persons temporarily detained pursuant to an ordinary traffic stop are not "in custody," and need not be given the warnings. But as soon as the suspect is arrested or his or her "freedom of action is curtailed to a 'degree associated with formal arrest,' " the *Miranda* safeguards become applicable and the warnings must be given. *Berkemer v. McCarty*, 468 U.S. ___, 82 L.Ed.2d 317, 104 S.Ct. 3138 (1984). Officer Buczinski followed the proper procedure in giving Standish the *Miranda* warnings as soon as Standish was substantially detained, arrested, or in custody.

The right to drive a motor vehicle on the public streets is not a natural right but a privilege, subject to reasonable regulation in the public interest. *Agee v. Kansas Highway Commission*, 198 Kan. 173, 180, 422 P.2d 949 (1967). When a blood test is required under state law, the accused is not entitled to assert the Fifth Amendment privilege against self-incrimination. Also, the blood test does not violate the Fourth Amendment right to be free of unreasonable searches and seizures; it is a reasonable test. *Schmerber v. California*, 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966). We conclude that when, as in Kansas, state law deems that all drivers have given consent to chemical tests of blood or breath when arrested for driving while under the influence, and that if the person arrested refuses to submit to the test certain consequences follow, no constitutional right to consult counsel in order to determine whether to submit to the test attaches. See *Peterson v. State*, 261 N.W.2d at 410, and *Hoffman v. Iowa Dept. of Transp.*, 257 N.W.2d at 26. If, as here, it is convenient to give the accused an opportunity to call an attorney, that procedure may be followed; but contacting an attorney or having one present at this stage of the proceedings is not an absolute right and cannot be used to delay or thwart the implied consent procedure.

In the future, when an officer in making a DUI arrest gives the suspect the *Miranda* warnings, he or she should also tell the person arrested:

"Kansas law provides that a person who drives a motor vehicle shall be deemed to have given consent to submit to a chemical test of breath or blood, to determine the alcoholic content of the person's blood, whenever the person is arrested or taken into custody for operating a motor vehicle while under the influence of alcohol.

"Your right to consent or refuse to take a chemical test is not a constitutional right. You have no constitutional right to consult with an attorney as to whether or not you will take the test."

Also, and although not required to do so by our earlier cases, the officer could well add:

"If you refuse to take the test, the fact of your refusal can be used against you in any trial for driving under the influence of alcohol.

"Also, if you refuse to take the test, your driver's license will probably be suspended for a period of not less than 120 days and not more than one year."

Under the facts of the case now before us, we hold that the district court erred in holding that Standish timely rescinded his earlier refusal to submit to the test. However, in light of the confusion caused by giving the *Miranda* warning without explaining the inapplicability of the right to counsel when the accused was determining whether to submit to the test, we hold that Standish's refusal was reasonable.

The judgment is affirmed.

PRAGER, and HOLMES, JJ., not participating.