**Patrick J. MOOS, Plaintiff,**

v.

**Gary L. NORTON and the City of Great Bend, Kansas, Defendants.**

**Civ. A. No. 90–1007–T.**

United States District Court,
D. Kansas.

March 20, 1992.

Michael S. Holland, Russell, Kan., for plaintiff.

Allen G. Glendenning, Watkins, Calcara, Rondeau & Friedman, P.A., Great Bend, Kan., for defendants.

## MEMORANDUM AND ORDER

THEIS, Senior District Judge.

This matter is before the court on the defendants' motion for summary judgment (Doc. 33). This is a civil rights action brought under 42 U.S.C. § 1983 against Gary L. Norton, an officer with the Great Bend Police Department, and the City of Great Bend. Plaintiff Moos alleges that after defendant Norton arrested Moos for driving under the influence (DUI), Norton refused to permit Moos to confer with counsel. Plaintiff claims that the denial of his request for counsel violates his due process rights under the fifth and fourteenth amendments to the Constitution, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Specifically, plaintiff alleges that Norton violated his fifth amendment rights by refusing to permit plaintiff to confer with counsel after his arrest and request for counsel and by continuing to question plaintiff after his request for counsel. Plaintiff Moos also challenges the constitutionality of K.S.A. § 8–1001(f)(1). Plaintiff sought actual and punitive damages. Pretrial Order, Doc. 42. Plaintiff has since abandoned his claim for punitive damages. *See* Doc. 46 (plaintiff's response to motion for summary judgment).

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials contained in the nonmoving party's pleadings, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 255, 106 S.Ct. at 2513–14.

The following facts are uncontroverted.

1. On January 12, 1988, the plaintiff was stopped by the defendant Officer Gary L. Norton.

2. The stop occurred at approximately 12:30 a.m.

3. At the time of the stop, the plaintiff had just left the Normandy Room, a bar in Great Bend, where he had been drinking.

4. Norton approached the plaintiff's vehicle and requested plaintiff to produce his driver's license.

5. Norton shone his flashlight on the plaintiff's billfold to assist plaintiff in finding his license. Nevertheless, plaintiff passed his driver's license twice before seeing it and producing it.

6. At this time, Norton noticed a strong odor of alcohol on the plaintiff's breath. Plaintiff has attempted to controvert this fact by relying on portions of his deposition in which he testified that he only had two drinks that evening. This testimony is insufficient to create an issue of fact regarding whether defendant Norton noticed an odor of alcohol. It is uncontroverted that plaintiff had been drinking.

7. Norton then requested plaintiff to perform three field sobriety tests. Each of the tests was explained and demonstrated to the plaintiff prior to his being asked to perform it.

8. The first sobriety test requested of the plaintiff was to recite the alphabet. The plaintiff was requested twice to recite the alphabet and failed to complete it either time. The plaintiff denies this statement of fact. Plaintiff relies on a portion of his deposition where he testified that he stopped reciting the alphabet once to ask if he was going to be arrested and that Officer Norton then cut him off after he started over. The court finds that the fact as set forth by defendants is not truly controverted, since plaintiff admits that he never recited the entire alphabet. Even if controverted, the factual dispute is not material to the outcome of this case.

9. The plaintiff was then asked to stand on one foot at a time and count to five. The plaintiff was unable to stand on his right foot for more than the count of three before being required to place the other foot on the ground to maintain his balance. The plaintiff was able to stand on his left

foot for the full count of five but lost his balance as he was placing his other foot back on the ground.

10. The plaintiff was also asked to touch his finger to his nose while he had his head tipped back and his eyes closed. The plaintiff was unable to perform this test correctly on two tries with his left hand. Plaintiff refused to perform the test with his right hand.

11. Plaintiff contends that he was advised of his *Miranda* rights at the scene upon being arrested. The defendants dispute this and assert that *Miranda* rights were not read until after plaintiff refused to take the breath test at the police station; however, defendants concede that plaintiff's version must be accepted as true for purposes of the motion for summary judgment.

12. Plaintiff contends that he requested an attorney immediately and repeatedly at the scene of the traffic stop and while in transit to the police station. Defendants do not admit this, but again concede that plaintiff's version must be accepted for present purposes.

13. Neither at the scene nor during transport to the police station did Norton ask any questions of the plaintiff other than requesting him to produce his driver's license and to perform the field sobriety tests, and asking plaintiff if he had been drinking. Plaintiff testified that he recalls nothing else Norton said to him, other than to advise plaintiff that he had no right to an attorney. Plaintiff attempts to deny this statement of fact as follows. Plaintiff asserts that he requested counsel after his arrest and before being placed in the patrol car and again requested counsel during transportation to the Great Bend Police Department. Again, accepting plaintiff's version of events as true, plaintiff requested counsel at several times and Officer Norton advised plaintiff that he had no right to counsel. This does not controvert the defendants' asserted statement of fact that Officer Norton asked no questions of the plaintiff other than those that have been specified.

14. Plaintiff also testified in his deposition that the transcript of the trial on the suspension of his license would contain details of any statements made to him at any time by Norton. That transcript contains the following testimony:

Q.: You asked for an attorney?

A.: Yes.

Q.: Had he put you in the car?

A.: Yes.

Q.: And what was his response to that?

A.: Well, that I had to take the breath test and what have you. And I advised him I wanted my attorney before I did any further tests. That I was more or less scared being under arrest and I didn't, I figured if it was that easy to arrest somebody for DUI, that I wasn't going to do anything else until I seen an attorney.

Q.: And did he make any response to your second request for an attorney?

A.: No, not—no, he just took me to the police station at that time.

15. After arrival at the police station, the plaintiff was given a copy of the Kansas Implied Consent Advisory form, which was read to him as he read along on his copy. This form provides, among other things, that refusal to submit to and complete a requested breath test will result in driver's license suspension and that there is no right to consult with an attorney regarding whether to submit to testing.

16. The plaintiff was then asked to undergo a breath test, which he refused to take unless and until he would be permitted to consult with an attorney.

17. The plaintiff was again advised of the consequences of refusing to take the breath test, namely the suspension of his driver's license, and again he refused to take the test. Plaintiff has attempted to controvert and/or supplement this statement of fact by relying on a portion of his deposition testimony. The testimony relied on does not controvert the fact asserted by the defendants—that plaintiff refused to take the breath test after being advised of the consequences of refusal. The testimony plaintiff relies on (Moos deposition, p. 73, lines 1–21) merely provides that plain-

tiff refused the breath test at least twice when requested to take it. Plaintiff did not deny that he was again warned of the consequences of his refusal.

18. At all times, plaintiff refused the breath test and never indicated any change of mind in this regard.

19. After plaintiff refused to take the breath test, he was asked whether he would answer any questions concerning the charge against him of driving under the influence. The plaintiff replied that he would not answer any questions.

20. After the plaintiff refused to answer the questions on the Alcohol Influence Report, he was transported to the Barton County Sheriff's Department for booking. Plaintiff was asked no further questions by Norton or any other agent of the City of Great Bend.

21. The plaintiff was tried before the Municipal Court of Great Bend, Kansas, on charges of DUI, driving left of center, and not wearing a seat belt. He was convicted on all three counts.

22. The plaintiff appealed his conviction to the District Court. While that appeal was pending, the plaintiff and the City entered into an Agreement for Pretrial Diversion.

23. As a result of plaintiff's refusal to submit to the breath test, plaintiff's license was suspended pursuant to Kansas Implied Consent Advisory Procedure. Plaintiff challenged that suspension in District Court, where it was upheld. The District Court specifically rejected plaintiff's arguments regarding the constitutionality of the Kansas Implied Consent law and his claims that his fifth amendment rights were violated.

24. The plaintiff appealed the suspension of his driver's license to the Court of Appeals of the State of Kansas. The Kansas Court of Appeals affirmed in an unpublished memorandum opinion dated March 15, 1991. The Kansas Supreme Court denied plaintiff's petition for review on April 23, 1991. *See* 248 Kan. 996.

25. Plaintiff was not issued a citation until after he refused to take the breath test.

The following uncontroverted facts are derived from the statement of facts contained in the plaintiff's response brief.

26. After plaintiff completed the field sobriety tests, he was arrested and given his *Miranda* warnings. Defendants do not agree with this statement; however, they again concede that plaintiff's version of when the *Miranda* rights were given must be accepted as true for purposes of the motion for summary judgment.

27. There was no one present at the arrest scene other than Moos and Norton.

28. Norton testified at his deposition that he did not believe it would have jeopardized the requested chemical test to permit Moos to first confer with counsel before submitting to the test. The court notes defendants' objections to this line of questioning at the deposition. This fact is not material to the resolution of the issues.

29. Norton never attempted to get Moos an attorney after he requested one. As defendant points out, Norton also testified that plaintiff would be given the opportunity to contact an attorney when he was booked in, that the Great Bend Police did not do the booking, and that once the police procedures concerning DUI were completed, the plaintiff would be transported to the Barton County Jail.

30. Officer Norton testified that when a person has been arrested for an offense such as DUI, the person is to be allowed counsel within a reasonable amount of time after the implied consent procedures and the breath test.

31. Plaintiff did not tell Norton why he wanted counsel.

32. Norton did not ask plaintiff why he wanted counsel.

33. Norton did not permit plaintiff to consult with counsel because under the implied consent procedures, one does not have the right to consult counsel prior to taking the breath test.

34. According to Norton, permitting plaintiff five or six minutes to consult an

attorney prior to taking the test would not have jeopardized the test results. The court notes defendants' objections to this line of testimony in Officer Norton's deposition. This fact is not material.

The Kansas Implied Consent statute provides in pertinent part: "Any person who operates or attempts to operate a motor vehicle within this state is deemed to have given consent ... to submit to one or more tests of the person's blood, breath, or urine or other bodily substance to determine the presence of alcohol or drugs." K.S.A. § 8–1001(a) (1991). The statute provides that the refusal to take a requested blood, breath, or urine test shall result in the suspension of driving privileges. *Id.* § 8–1014. Upon a request to take a test, a conditional response such as "I want to talk to my attorney first," is considered a refusal to take the test. *Standish v. Department of Revenue,* 235 Kan. 900, 903, 683 P.2d 1276 (1984). The Kansas Supreme Court has held that there is no constitutional right to consult with counsel in order to determine whether to submit to a breath test. *Id.* at 904, 683 P.2d 1276. At the time of plaintiff Moos' arrest, the statute provided that there was no right to consult with an attorney regarding whether to submit to testing. K.S.A. § 8–1001(f)(1)(A) (1987 Supp.).[1] The Kansas Supreme Court has applied the rule—that there is no constitutional right to an attorney before submitting to a test—in both civil and criminal cases. *Standish,* 235 Kan. 900, 683 P.2d 1276 (suspension of license); *State v. Bristor,* 236 Kan. 313, 691 P.2d 1 (1984) (DUI prosecution).

Plaintiff's complaint is based on the fact that he was not allowed to contact an attorney when he requested one before deciding whether to take the breath test. Plaintiff claims that upon his request for counsel, all questioning pursuant to the implied consent procedures must cease. Further, plaintiff claims that he should not have been required to decide whether to submit to the breath test until he had the chance to consult with counsel.

The issue before the court is whether there is a constitutionally protected right to counsel when a DUI suspect requests counsel before taking a breath test. Plaintiff contends that immediately upon his request for counsel and before the breath test may be administered, he had a right to consult with counsel. The defendants contend that there is no right to counsel before taking a breath test since such a test is nontestimonial in nature and *Miranda* applies only to custodial interrogation. For the reasons discussed below, the court agrees with defendants. Alcohol testing does not constitute custodial interrogation; therefore the protections of *Miranda* are inapplicable. Plaintiff had no right to confer with counsel before deciding whether to take the breath test. Since plaintiff had no constitutionally protected right to consult with an attorney before deciding whether to take the test, the denial of his request cannot constitute a violation of any of his rights.

In *Miranda v. Arizona,* the Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defen-

---

**1.** The statute now provides that there is no *constitutional* right to consult with an attorney re- garding whether to submit to testing. K.S.A. § 8–1001(f)(1)(C) (1991).

dant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (footnote omitted).

In *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court held that "a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in *Miranda*, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." *Id.* at 434, 104 S.Ct. at 3147 (footnote omitted). Thus a person arrested for DUI is entitled to the benefits of *Miranda* during custodial interrogation. However, a person temporarily detained pursuant to an ordinary traffic stop is not "in custody" for the purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. at 440, 104 S.Ct. at 3150. Only when the suspect's freedom of action is curtailed to a degree associated with formal arrest do the protections of *Miranda* become applicable. *Id.* A request to perform a field sobriety test is not the functional equivalent of formal arrest. *Id.* at 442, 86 S.Ct. at 1610–11. Thus, plaintiff had no right to counsel pursuant to *Miranda* while at the scene of the traffic stop or while performing the field sobriety tests. Plaintiff's rights under *Miranda* come into play only after formal arrest and during custodial interrogation.

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court held that a state could force a defendant to submit to a blood alcohol test without violating the defendant's fifth amendment privilege against self-incrimination. *See South Dakota v. Neville*, 459 U.S. 553, 554, 103 S.Ct. 916, 917–18, 74 L.Ed.2d 748 (1983). In *Schmerber*, the Court also rejected arguments that blood testing violated the fifth

amendment right to due process, the sixth amendment right to counsel, and the fourth amendment's prohibition against unreasonable searches and seizures. *See Neville*, 459 U.S. at 559 n. 8, 103 S.Ct. at 920 n. 8. A police request of a DUI suspect to submit to a blood alcohol test does not constitute custodial interrogation for purposes of the fifth amendment privilege against self-incrimination and *Miranda*. *Neville*, 459 U.S. at 564 n. 15, 103 S.Ct. at 923 n. 15.[2]

In *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the Supreme Court again reiterated, in the context of a DUI arrest, that the privilege against self-incrimination does not protect a suspect from being compelled by the state to produce real or physical evidence. *Id.* at 589, 110 S.Ct. at 2643.

The Courts of Appeals which have addressed the issue have held that there is no constitutional right to consult with counsel before deciding whether to submit to a blood alcohol test. *See McVeigh v. Smith*, 872 F.2d 725 (6th Cir.1989) (rejecting claims under fifth and fourteenth amendment due process clause and sixth amendment); *Langelier v. Coleman*, 861 F.2d 1508 (11th Cir.1988) (rejecting claims based on first amendment, due process, and right to privacy).

Noting that the plaintiff had asserted no fifth amendment claim to a right to counsel prior to consenting to undergo a blood alcohol test, the Eleventh Circuit stated in *Langelier v. Coleman:*

> And he has none to assert. Neither the fifth amendment privilege against self-incrimination nor the due process clause prohibits the state from compelling a suspect to submit to blood testing. *Schmerber v. California*, 384 U.S. 757, 759–61, 86 S.Ct. 1826, 1829–31, 16 L.Ed.2d 908, 913–14 (1966). Also, refusal to undergo testing following an officer's lawful request is not a product of coercion, and therefore refusal is not protected by the privilege against self-incrimination. *South Dakota v. Neville*, 459 U.S.

---

**2.** While not directly relevant here, the court notes that a person suspected of drunk driving has no constitutional right to refuse to take a

blood alcohol test. *Neville*, 459 U.S. at 560 n. 10, 103 S.Ct. at 921 n. 10.

553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983). Moreover, such a refusal enjoys no *Miranda* protection beyond basic fifth amendment protection. *Id.* at 564 n. 15, 103 S.Ct. at 923 n. 15, 74 L.Ed.2d at 759 n. 15 ("police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*").

861 F.2d at 1510 n. 3.

The Sixth Circuit's reasoning in *McVeigh* is persuasive:

The Supreme Court has held that the fifth amendment right to counsel protects an individual's privilege against making incriminating statements against himself. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the Supreme Court has expressly held that a blood sample taken for alcohol testing was not within the fifth amendment privilege since "testimonial capacities were in no way implicated." *Schmerber,* 384 U.S. at 765, 86 S.Ct. at 1833. More importantly for our purposes, the Supreme Court has also held that "a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda* .... Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection." *South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983). The Court reasoned as follows:

We recognize, of course, that the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make. But the criminal process often requires suspects and defendants to make difficult choices. We hold, therefore, that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination.

*Id.* at 564, 103 S.Ct. at 922–23 (citation and footnote omitted).

Petitioner does not argue that the fifth amendment privilege against self-incrimi-

nation is the basis for her alleged right to counsel. The Supreme Court clearly rejected that position in *Neville.*

*McVeigh,* 872 F.2d at 728.

This court can add nothing to the analysis other than to note that both the Sixth and Eleventh Circuits ruled that the precise argument made here—that the fifth amendment privilege against self-incrimination as applied in *Miranda* forms the basis for a right to counsel before taking a blood or breath alcohol test—has already been rejected by the United States Supreme Court in *South Dakota v. Neville.*

The court acknowledges that when an accused invokes his fifth amendment rights and requests counsel, all interrogation must cease. The court also agrees that an accused, who has expressed his desire to deal with the police only through counsel, cannot be subjected to further interrogation until counsel has been made available to him (unless the accused initiates further communication with the police). *See Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). The fifth amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. *Id.* at 485–86, 101 S.Ct. at 1885. In the present case, no custodial interrogation occurred. The undisputed facts establish that Officer Norton asked no questions of the plaintiff Moos that would constitute interrogation. The breath test to which plaintiff was requested to submit did not constitute custodial interrogation. Plaintiff had no right to counsel pursuant to *Miranda;* therefore, Moos could not force the proceedings to a halt by requesting counsel.

■ Contrary to the arguments of plaintiff, *Miranda* and *Edwards* do not provide that all questioning must cease when a suspect requests counsel. Only custodial interrogation must cease upon invocation of the right to counsel. The taking of physical evidence to determine intoxication does not constitute custodial interrogation. Norton's request that plaintiff submit to a breath test did not constitute custodial interrogation. Therefore, plaintiff's privi-

lege against self-incrimination did not come into play and plaintiff had no right to an attorney.

Given this resolution, the court need not address defendants' remaining arguments. The plaintiff's claim that the Kansas Implied Consent law is unconstitutional is raised in the Pretrial Order. The court must reject plaintiff's claim that the law is unconstitutional. There is nothing about the statute that infringes on a criminal suspect's fifth amendment privilege against self-incrimination and related right to counsel as those rights have been interpreted by the United States Supreme Court. The statute does not impermissibly infringe on the fifth amendment right to counsel. Summary judgment shall be granted in favor of defendants.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment (Doc. 33) is hereby granted.