**George Robert RICK, Appellee,**

v.

**STATE of Oklahoma, ex rel., DEPARTMENT OF PUBLIC SAFETY, Appellant.**

**No. 79533.**

Supreme Court of Oklahoma.

May 4, 1993.

James W. Summerlin, James W. Summerlin, P.C., Chandler, for appellee.

Mike O'Brien, Oklahoma Dept. of Public Safety, Oklahoma City, for appellant.

ALMA WILSON, Justice:

On November 29, 1991, the Department of Public Safety, appellant, revoked the driving privileges of the appellee, George Robert Rick, for a period of 180 days pursuant to the Implied Consent Law.[1] The appellee had refused to take a test to determine the alcohol content of his breath. The appellee appealed his revocation to the

---

1. 1967 Okla.Sess.Laws, ch. 86, §§ 1–12, effective    January 1, 1969. The act is now codified at 47

district court.[2] The district court vacated the order of the appellant and restored the appellee's drivers license. The Court of Appeals reversed and remanded with instructions to deny the appellee's petition. Certiorari was granted to decide whether the blood or breath test has been refused if a motorist initially declines the test but reconsiders and asks to take the test shortly thereafter. Consistent with our holding in *Baldwin v. State, ex rel. Dept. of Public Safety*, 849 P.2d 400 (Okla.1993), we hold that the motorist has not refused the test if the assent is timely and given unequivocally.

The following facts are uncontested. On November 9, 1991, Oklahoma Highway Patrol Trooper Bonner first noticed Mr. Rick's vehicle, which appeared to be speeding. The trooper's radar confirmed that Mr. Rick was exceeding the speed limit, so Trooper Bonner stopped Mr. Rick. The trooper noticed the odor of alcohol and administered field sobriety tests. He decided from the tests that Mr. Rick was under the influence of an alcoholic beverage. Rick was then arrested. After he was in the trooper's patrol car, Trooper Bonner read a form notifying Mr. Rick of the Implied Consent Law. Rick was then asked if he would take the test and he replied, "I will not." The traffic citation reveals that Mr. Rick was arrested at 8:30 p.m.

Trooper Bonner took him to the jail, which was three or four minutes away. Mr. Rick was then booked. After he was booked, he was allowed to talk to his lawyer. Rick then asked to take the breath test and the trooper told him that he had already waived it. Mr. Rick then asked to be taken to a hospital for a blood test and that was also denied. Trooper Bonner submitted a form to Mr. Rick showing that Rick had refused to take the test under the Implied Consent Law, and Rick refused to sign it. The test room is in the basement of the building where the jail is located, and according to the trooper's testimony,

only two or three minutes away. The trooper admitted that the test would have remained effective if administered when requested.

The trial judge found that only ten minutes had elapsed between the initial refusal and the request to be given the breath test. He found that if the trooper had decided to administer the test, the trooper would not have been greatly inconvenienced. The judge also found that there was a total absence of malicious intent on behalf of Mr. Rick in his refusal and subsequent recantation. Accordingly, the judge found that Mr. Rick had not refused the test.

■ As stated above, this Court has recently held that a motorist has not refused the test mandated by the Implied Consent Law if the assent is timely and given unequivocally. We adopted the five-element test for timeliness as provided by the Supreme Court of Kansas in *Standish v. Department of Revenue, Motor Veh. Div.*, 235 Kan. 900, 683 P.2d 1276 (1984).[3] The Kansas court held that to be effective, the subsequent consent must be made:

(1) within a very short and reasonable time after the prior first refusal;

(2) when a test administered upon the subsequent consent would still be accurate;

(3) when testing equipment is still readily available;

(4) when honoring the request will result in no substantial inconvenience or expense to the police; and

(5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest.

*Standish*, 683 P.2d at 1280.

The appellant cites *Robertson v. State ex rel. Lester*, 501 P.2d 1099 (Okla.1972), to support its position that Mr. Ricks was not entitled to change his mind concerning taking the test. Robertson was arrested for operating a motor vehicle upon the public

O.S.1991, § 751 et seq.

**2.** 1988 Okla.Sess.Laws, ch. 242, § 13, now codified at 47 O.S.1991, § 755.

**3.** *Baldwin v. State ex rel. Dept. of Public Safety*, 849 P.2d 400, 404 (Okla.1993).

highway while under the influence of alcohol. He desired to consult with counsel before deciding whether or not to submit to the test. This Court held that "A refusal by an arrested person to submit to a chemical test before consulting his attorney does not afford a reasonable ground for refusing to submit to the test under the implied consent law." *Robertson*, 501 P.2d at 1104. However, while an arrestee has no right to confer with an attorney, if he does consult one promptly, he may meet the test set out in *Standish*. Merely because the arrestee has in fact consulted an attorney and recanted his refusal does not stand as a barrier to meeting the *Standish* test. *Robertson* alludes to such a possibility in the reasoning that went into the opinion. While there is no absolute right to consult an attorney before deciding to submit to the test, if the consultation occurs within a short time of the refusal and there is no danger of delay within the *Standish* test, the arrestee may still recant and the test be administered.

Other states have dealt with this same issue and resolved it by allowing the arrestee to rescind his refusal after an attorney or some other person had been consulted. In *Larmer v. Department of Highway Safety*, 522 So.2d 941 (Fla.Dist.Ct.App. 1988), the arrestee refused to take the test until he could speak with his employer or an attorney. The arresting officer took this as a refusal. Within one or two minutes the arrestee was permitted to call his employer who advised him to request the breathalyzer test. He was not allowed to take the test. After discussing cases from other jurisdictions, the Florida court held that the test should have been given. It found that the arrestee's retraction of his initial refusal came moments after that refusal, and while he was continuously in the presence of the police officers, and in circumstances where no inconvenience would result by permitting him immediately thereafter to take the test. *Larmer*, 522 So.2d at 944. The court expressed its opinion that permitting him to take the test

would produce the evidence that is the object and intent of Florida's Implied Consent Law. *Larmer*, 522 So.2d at 944.

In *Stone v. McCullion*, 27 Ohio App.3d 112, 500 N.E.2d 326 (1985), the Ohio Court of Appeals reversed and remanded a trial court judgment that the arrestee had refused to submit to the test required under its Implied Consent Law. The arrestee was taken to the police station and allowed to call his attorney, but the arresting officer terminated the phone conversation before the arrestee was finished. Following his attorney's advice, he told the officer that his attorney was coming to the police station, that he did not refuse to take the chemical test, but that he wanted to discuss the matter with his attorney before making any other decisions. The attorney arrived within fifteen minutes. The arresting officer had already decided to report that the arrestee had refused the test. The Ohio Court of Appeals recognized that law enforcement personnel must perform the chemical tests within a fixed period of time, because the test results are of limited significance if taken more than two hours after the time of the alleged violation. It also noted that under its law, the arrestee had an right to communicate immediately and to consult privately with an attorney. It found that these two conflicting interests must be balanced and held:

As suggested by *Siegwald v. Curry* (1974), 40 Ohio App.2d 313, 319 N.E.2d 381 [69 O.O.2d 293], the delay requested by the accused must be short enough so that the results of the test are not rendered inconsequential by the passage of time. No specific period of time (such as fifteen minutes) can be laid down as reasonable in any and all events. We hold that under the uncontroverted facts and circumstances disclosed by plaintiff's evidence, plaintiff's conduct did not constitute a 'refusal' under R.C. 4511.191(D). The dismissal of plaintiff's case was premature.

*Stone*, 27 Ohio App.3d at 114, 500 N.E.2d at 328.[4]

**4.** *See also Zahtila v. Motor Vehicle Div., Dept. of Rev.*, 39 Colo.App. 8, 560 P.2d 847 (Colo.Ct.App.

1977) (arrestee was permitted to confer with his attorney after an initial refusal, and agreed to

■ We apply the facts in the case at bar to the rule as established in *Baldwin.* The trial court found a total absence of malicious intent on the part of Mr. Rick. There is no evidence of equivocation as in *Application of Kunneman,* 501 P.2d 910 (Okla.App.1972).[5] Because the lapse of time between the initial refusal at the arrest site and recantation was only ten minutes, according to the trial judge's findings, the time period meets the first element of the test. The second element is met since the parties do not contest that such a short passage of time assures that had the arresting trooper given the test, the results would have been accurate. The trooper testified that the testing equipment was only two to three minutes away, thus satisfying the third element. The trial judge found that giving the test would have resulted in no great inconvenience to Trooper Bonner, and the facts show no great expense involved. This fulfills the requirement of the fourth element. The fifth element is met by the testimony indicating that Mr. Rick was still in the custody of Trooper Bonner at the time he asked to take the test, which test the trooper denied. Finally, Mr. Rick has met his burden of proof in presenting his evidence to the trial court, which found that under the facts no refusal had taken place.

Accordingly, the opinion of the Court of Appeals is VACATED. The judgment of the trial court is AFFIRMED.

HODGES, C.J., LAVENDER, V.C.J., HARGRAVE, OPALA, KAUGER, and SUMMERS, JJ., concur.

SIMMS and WATT, JJ., dissent.

WATT, Justice, with whom SIMMS, J. joins, dissenting.

I dissent. The majority's opinion relies on *Baldwin v. Dept. of Public Safety,* 849 P.2d 400 (Okla.1993), in which I dissented. Because of my fundamental disagreement with *Baldwin,* I cannot join the majority in today's opinion. My reasons are set forth in detail in my dissenting opinion in *Baldwin,* Id.

take the test within twenty-five minutes of initial refusal); *Matter of Smith,* 115 Idaho 808, 770 P.2d 817 (Idaho App.1989) (arrestee initially declined test, but within ten to twenty minutes after consulting an attorney, he requested an opportunity to take it); *Lowery v. Spradling,* 554 S.W.2d 555 (Mo.Ct.App.1977) (arrestee, who had some handicaps, requested to call his employer, was permitted to do so, but officer who originally agreed to wait for employer to arrive, refused to allow test even though employer arrived within twenty minutes as she said she would); *State v. Ginnetti,* 232 N.J.Super. 378, 556 A.2d 1339 (N.J.Super.Ct. Law Div.1989) (arrestee initially refused to submit to the breathalyzer examination, was permitted to speak to his attorney and then requested to take the test within

five minutes of his initial refusal); *Lund v. Hjelle,* 224 N.W.2d 552 (N.D.1974) (after arrestee refused to submit to test, he contacted his insurance agent who advised that he take it and he requested the test within one hour of his arrest); *Fleckenstein v. Bureau of Motor Vehicles,* 44 Ohio Misc. 1, 335 N.E.2d 756 (Mun.Ct. 1975) (after refusing to take the test, the arrestee called her husband who advised she take it; she offered to take the test within ten minutes of her refusal).

5. In *Kunneman* the arrestee was given four or five opportunities to blow into the breathalyzer machine, but each time he sucked on it instead.