NOT DESIGNATED FOR PUBLICATION

No. 124,035

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHELBY BURK,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Rush District Court; BRUCE T. GATTERMAN, judge. Opinion filed April 8, 2022. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Donald J. Cooper*, of Kansas Department of Revenue, for appellee.

Before HILL, P.J., POWELL and CLINE, JJ.

PER CURIAM: Shelby Burk appeals the Kansas Department of Revenue's suspension of his driving license. He claims that he had validly rescinded his refusal to have a blood alcohol test after his arrest for driving under the influence. Burk sought judicial review of the ruling and the district court affirmed the Department's suspension order. He now appeals to this court. Our review of the record discloses no error and we affirm.

1

*This case started with Burk's arrest.*

In March 2020 Burk was arrested for driving while under the influence of alcohol. The sheriff took Burk to the law enforcement center and asked him to submit to a blood test. There was no Intoxilyzer at the law enforcement center, so no breath test was possible. Burk refused to provide a blood test and he was then served with an Officer's Certification and Notice of Suspension Form DC-27 notifying him of his suspension for refusing to take the test.

Burk requested an administrative hearing concerning his blood test refusal. Following a phone hearing, the Department affirmed the suspension of Burk's driving license.

Burk sought judicial review of the administrative action suspending his driving license in Rush County District Court. He argued that he should be granted relief because he rescinded his refusal to take a blood test. Two witnesses testified at the evidentiary hearing:  Burk and Sheriff Ward Corsair, the arresting officer.

*Burk's Testimony*

Burk testified he refused a blood test because he did not want to be paraded around his small town in handcuffs. He said that he asked the sheriff if he could do a breath test and the sheriff administered a preliminary breath test. Burk was then released from custody.

As soon as Burk got home, he changed his mind about the blood test. Burk did not agree with the results of the breath test and knew a blood test would be accurate. He walked to the hospital and had his physician's assistant call the sheriff. Less than 30 minutes passed between the time Burk was released and when he called Sheriff Corsair.

*Sheriff Corsair's Testimony*

Sheriff Corsair testified that after taking Burk to the law enforcement center, he requested Burk take a blood test; Burk refused. Sheriff Corsair gave Burk a preliminary breath test and asked him again to submit a blood test. Burk refused again and Sheriff Corsair provided Burk with a DC-27 form and certified that Burk refused a blood test. He told Burk he could obtain his own testing if he wished.

Sheriff Corsair received a call from Burk after Burk was released, saying he was at the hospital and wanted to take a blood test. At that point the sheriff was at home taking a lunch break. Sheriff Corsair told Burk he could not do an evidentiary test because he already released Burk and served him a DC-27.

Sheriff Corsair conceded that he was unaware of anything that would have decreased Burk's blood alcohol level after being released from custody, other than the passage of time. He agreed that Burk's blood test would have been administered within 3 hours of when he saw Burk operate his vehicle.

Burk argued the only element not established for a rescinded refusal was that he never left custody. Burk argued the fact that he left custody for 30 minutes should not disqualify him from rescinding his refusal under the circumstances. Burk showed up at the hospital within a reasonable amount of time, testing was readily available, and the sheriff was not far from the hospital. Burk asked to submit a blood test and there was nothing he could have done during that time to lower his blood alcohol content.

*District Court's Decision*

Following the hearing the district court denied Burk's petition. The court reasoned that Burk did not establish that he never left the custody of the arresting officer before

3

rescinding his refusal, a requirement under *Standish v. Department of Revenue*, 235 Kan. 900, Syl. ¶ 1, 683 P.2d 1276 (1984).

In this timely appeal, Burk argues that the court erred in denying his petition for review because he met the requirements of effectively rescinding his refusal.

We review a trial court's license suspension ruling to determine whether it is supported by substantial competent evidence. When there is no factual dispute, a reviewing court is asked to interpret the law and in turn our review of the law is unlimited. *McIntosh v. Kansas Dept. of Revenue*, 291 Kan. 41, 43, 237 P.3d 1243 (2010). There is no factual dispute here—our review is unlimited.

*Rescinded Refusal Law*

In *Standish*, the Kansas Supreme Court held that the initial refusal to consent to a breath or blood test in a DUI investigation could be cured if the individual properly rescinded. The *Standish* court set out several requirements to determine whether a rescission is effective:

"To be effective, the subsequent consent must be made:

(1)    within a very short and reasonable time after the prior first refusal;
(2)    when a test administered upon the subsequent consent would still be accurate;
(3)    when testing equipment is still readily available;
(4)    when honoring the request will result in no substantial inconvenience or expense to the police; and
(5)    when the individual requesting the test has been in the custody of the arresting officer and under observation of the whole time since arrest." 235 Kan. at 902-03.

4

The *Standish* requirements were created to further the central aim of the Kansas implied consent law: drivers should be tested. The court explained "the [blood or breath] test should be encouraged and the person arrested should be given every reasonable opportunity to submit to it." 239 Kan. at 902.

To us, Burk argues that several cases have clarified the *Standish* requirements. He maintains that the district court incorrectly interpreted the holding in *McIntosh* by placing too much weight on the "in custody" requirement instead of the court's goal of providing individuals with every reasonable chance to submit to testing.

In *McIntosh*, the Supreme Court interpreted and applied the *Standish* requirements. The *McIntosh* court emphasized that *Standish* should be interpreted to furthering the stated goal of providing an arrested person every reasonable opportunity to submit to testing. *McIntosh*, 291 Kan. 41, Syl. ¶¶ 1-2.

*Custody Requirement*

Burk argues that the district court placed incorrect weight on the "in custody" requirement in *Standish* rather than focus on the goal of providing individuals with every reasonable opportunity to submit to testing. Burk points out that he was asked to submit to a blood test, not a breath test. He says the custody factor in *Standish* relates to breath tests because Kansas Department of Health and Environment protocols require a 20-minute deprivation period before administering a breath test. But there is no such requirement for blood testing. He also notes there is nothing he could do out of custody to lower his blood alcohol level or affect the reliability of a blood test. He wants us to confine the in-custody requirement to breath testing.

Burk argues he was denied a reasonable opportunity to submit to testing, relying on the language in *McIntosh*. Burk says the sheriff could have obtained a reliable test

5

when he presented himself at the hospital. Burk says he expedited the process by going to the hospital and there was no rational justification for not allowing him to take the blood test. He argues that the blood test would have been taken within the necessary 3-hour evidentiary period.

The Department argues there is no precedent suggesting that the custody requirement in *Standish* should apply only to breath tests and points out both evidentiary tests are treated the same. See K.S.A. 2020 Supp. 8-1001(p). The Department says Burk's interpretation of *Standish* would undermine precedent and contradict the rulings of courts with similar rescission language.

In support, the Department cites these cases:

*Eberle v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 759, 108 P.3d 465 (2005). In *Eberle* the panel found that the appellant did not meet the *Standish* custody requirement when he left the police station with his wife and immediately went back and asked to take a breath test:

> "[W]e believe the requirement that the suspect not leave the custody of the arresting officer encompasses more than a simple question about alcohol consumption. Once an individual is arrested for DUI and leaves the building, he or she is out of the custody of law enforcement officers; thus, the individual has lost the right to rescind a prior refusal to take the breath test." 33 Kan. App. 2d at 761.

*Lund v. Hjelle*, 224 N.W.2d 552, 557 (N.D. 1974), a North Dakota case the *Standish* court cited in forming the court-created refusal rescission rule. The Department points out that in *Lund* the court was dealing with a blood test refusal and stressed that the rescission must be within a reasonable time and the appellant must be in custody and under observation.

6

*Gaunt v. Motor Vehicle Div., Dept. of Transportation*, 136 Ariz. 424, 666 P.2d 524 (1983). In *Gaunt* the Arizona Court of Appeals adopted a refusal rescission test that is substantively the same as in *Standish* and *Lund*. The *Gaunt* court held that appellant could not rescind his refusal because he was no longer in custody. *Gaunt*, 136 Ariz. at 428.

The Department argues that Burk did not meet the requirements in *Standish* because he was not in police custody when he tried to rescind his refusal. Burk was no longer under the observation of any police officer or jail personnel. The Department argues that Burk could not rescind his refusal after leaving custody.

Burk does not point to any caselaw which says that the custody requirement does not apply to blood test cases. He only argues that the court should focus on the goal of providing individuals with every reasonable opportunity to submit to testing. There do not appear to be any Kansas rescinded refusal cases in which courts differentiate between blood and breath tests.

Burk argues that the custody requirement should not apply to him because he was only able to provide a blood test and nothing he could have done while he was out of custody would have affected the results of a blood test. He says the custody requirement is only necessary to comply with the 20-minute deprivation period before administering a breath test under the Kansas Department of Health and Environment protocols. This interpretation of the custody requirement requires an assumption that the only reason for the custody and observation requirement in *Standish* is to ensure that test results are accurate.

The *Eberle* panel held the custody requirement encompasses more than alcohol consumption and once a person leaves custody they no longer have the right to rescind refusal. 33 Kan. App. 2d at 761.

7

*McIntosh* interpreted the custody requirement to mean that an arrestee must remain in the custody of the arresting officer or another law enforcement officer, or the arrestee may be momentarily out of the arresting officer's physical presence under circumstances that will not compromise the integrity of the test results. 291 Kan. 41, Syl. ¶ 4. The *McIntosh* court found this interpretation in line to help provide every reasonable opportunity to submit to testing. 291 Kan. at 50. While the *McIntosh* court gave a relaxed interpretation of the custody and observation requirement, it did not suggest that there are any circumstances in which it does not apply.

An important difference between *McIntosh* and this case is that McIntosh remained in the custody of either the arresting officer, another officer, or jail personnel the entire time. McIntosh was searched when he arrived at the jail so the officers could attest that he did not drink alcohol after he refused the breath test. 291 Kan. at 51.

Here, there was no one observing Burk for 26 minutes. Had Burk taken the blood test when he walked to the hospital, Sheriff Corsair could not personally attest that Burk had not drunk alcohol since he last drove his vehicle. Additionally, there would be nothing preventing Burk from arguing at trial that he drank alcohol between the time he was released from custody and took the blood test. This argument would be illogical considering Burk is the one who presented himself for a blood test. But Burk *could* argue that he had a drink before he decided to rescind his refusal and thought if he got the blood test fast enough it would not affect his test results.

*Short and Reasonable Time Requirement*

The Department argues that Burk did not seek to rescind his refusal within a very short and reasonable time after his refusal to submit a blood test. Burk did not address this *Standish* requirement in his brief and the district court did not discuss this requirement when denying his petition.

In *Standish*, the court found that the appellant did not properly rescind his refusal to take a breath test when he was taken from the police station to the jail and did not request a test until after the officer left and returned to his other duties. Fifteen to thirty minutes passed before the appellant requested a test. The court did not clarify whether its ruling turned on the time that passed or the inconvenience to police. 235 Kan. at 901.

The *McIntosh* court said that *Standish* did not create a bright-line rule that 30 minutes is not a very short time. In determining whether a rescission is timely, the court should focus on the circumstances of the case, including a look at what took place during delay. 291 Kan. at 48. The *McIntosh* court found that appellant's rescission was timely under the circumstances when he rescinded his refusal at his first opportunity to speak to the officer, the officer had not left the jail to return to his regular duties, and the officer was still performing his duties to the DUI arrest. 291 Kan. at 48.

The Department argues that Burk's situation is more like *Standish* than *McIntosh* and therefore his rescission was not timely. The Department says that unlike in *McIntosh*, Sheriff Corsair completed his paperwork for the case and released Burk from custody. Burk left the station with his brother and Sheriff Corsair went on his lunch break. The Department argues that under these circumstances an officer is not expected to wait around for an arrestee to rescind his refusal after concluding the duties related to the arrest.

Whether a rescission is timely depends on the circumstances of the case. *McIntosh*, 291 Kan. at 48. It is unknown exactly when Burk refused a blood test, but 26 minutes passed between the time Burk was released and when he called Sheriff Corsair, so he waited at least 26 minutes to rescind his refusal. During that time Burk's brother drove him home, Burk walked to the hospital, and he solicited his physician's assistant to call Sheriff Corsair.

9

Even if we found Burk's attempted rescission timely, he did not meet the custody requirement in *Standish*. Thus, we must affirm the district court's finding that Burk did not rescind his refusal to take a blood test.

The district court properly ruled that Burk had no right to relief concerning his driving license suspension.

Affirmed.