Nos. 83,536
83,584

Kelly M. Hemphill and Solomon H. Buettgenbach,
*Appellants,* v. Kansas Department of Revenue, *Appellee.*
(11 P.3d 1165)

Opinion filed October 27, 2000.

*Gordon B. Stull,* of Stull & Rein, of Pratt, argued the cause and was on the brief for appellants.

*J. Brian Cox,* of Kansas Department of Revenue, argued the cause, and *Dana L. Fanoele,* was on the brief for appellee.

The opinion of the court was delivered by

Six, J.: This appeal concerns the Kansas Department of Health and Environment's (KDHE) responsibility to file administrative rules or regulations or any document adopted by such rules or regulations with the office of the Secretary of State under K.S.A. 77-416. At issue is KDHE's failure to file the manufacturer's operating manual for the equipment (a breathalyzer) used in administering breath alcohol tests. The failure to file issue is brought to us by Kelly Hemphill and Solomon Buettgenbach (the drivers) who were arrested for driving while under the influence of alcohol and

failed a breath test. Each driver appeals the Kansas Department of Revenue's (KDR) decision to suspend his driver's license.

The drivers contend that the breathalyzer manufacturers' instructions (operating manual), as mentioned in Kansas Administrative Regulation (K.A.R.) 28-32-1, are unpublished rules and regulations. They conclude that the instructions have no force and effect, thus invalidating their breath tests. The drivers also assert that the failure to file results in a due process violation.

An ancillary question is whether Buettgenbach's breathalyzer test results should have been excluded based on the fact that the testing officer was unfamiliar with the manufacturer's operating manual for the breathalyzer. The district court upheld the suspensions, rejecting the drivers' rule-filing and due process claims. Finding no error, we affirm.

Our jurisdiction is under K.S.A. 20-3018(c), transfer from the Court of Appeals on our motion. We review the KDR's decisions under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq*. K.S.A. 77-621 sets forth our scope of appellate review. We exercise the same standard of review as the district court. *Hickman Trust v. City of Clay Center*, 266 Kan. 1022, 1036, 974 P.2d 584 (1999).

## FACTS

The drivers were charged with driving while under the influence of alcohol. (Hemphill, on July 12, 1998, K.S.A. 8-1567, and Buettgenbach, on May 26, 1998, Pratt City Standard Traffic Ordinance 30[a][1]—the equivalent to K.S.A. 8-1567.) Each driver's license was suspended for 30 days after their separate administrative hearings for failing a breath alcohol test. K.S.A. 8-1001 *et seq*. The district court upheld the suspensions. The cases were consolidated for appeal.

## DISCUSSION

We first consider the drivers' rule-filing contention. The drivers conclude that the manufacturer's operating manual for the breathalyzer must be either filed under K.S.A. 77-416(a) with the Sec-

retary of State as a rule or regulation or filed because it is a document adopted by reference.

The legislature in K.S.A. 1999 Supp. 8-1002 and K.S.A. 1999 Supp. 65-1,107 authorizes testing of human breath for law enforcement purposes. K.S.A. 1999 Supp. 8-1002(a)(3) provides that the testing equipment and person operating the testing equipment shall be certified by the KDHE. There is apparently no dispute here that the testing equipment and operator were so certified. The critical question is whether the testing procedures used were adopted in accordance with legislative authority: K.S.A. 1999 Supp. 8-1002(a)(3)(B) ("the testing procedures used were in accordance with the requirements set out by KDHE") and K.S.A. 1999 Supp. 65-1,107(c) ("the secretary of health and environment may adopt rules and regulations establishing: [c] the requirements for the training, certification and periodic testing of persons who operate apparatus, equipment or devices, other than preliminary screening devices, for the testing of human breath for law enforcement purposes").

KDHE has adopted administrative regulations applicable to breath testing. K.A.R. 28-32-1 *et seq.* The procedure for filing administrative regulations is set forth in K.S.A. 77-416:

"Every rule and regulation filed in the office of the secretary of state shall be accompanied by a copy of the economic impact statement required by subsection (b) . . . and any document which is adopted by reference by the rule and regulation. . . ."

K.S.A. 77-415(4) defines "rule" and "regulation":

" 'Rule and regulation,' 'rule,' 'regulation' and words of like effect mean a standard, statement of policy or general order, including amendments or revocations thereof, of general application and having the effect of law, issued or adopted by a state agency to implement or interpret legislation enforced or administered by such state agency or to govern the organization or procedure of such state agency. Every rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act. . . . A rule and regulation as herein defined shall not include any rule and regulation which: . . . (p) is a pamphlet or other explanatory material not intended or designed as interpretation of legislation enforced or adopted by a state agency but is merely informational in nature."

The parties agree that the KDHE has not filed the breathalyzer manufacturer's operating manual with the Secretary of State. K.A.R. 28-32-1 says that "[e]quipment shall be operated strictly according to description provided by the manufacturer and approved by the department of health and environment."

The drivers reason that because the manufacturer's instructions for the breathalyzer are not filed as rules and regulations, they have no force and effect; thus, their breath tests are invalid.

The drivers rely on *Bruns v. Kansas State Board of Technical Professions*, 255 Kan. 728, 877 P.2d 391 (1994). Bruns, an engineer, sought a professional license based on reciprocity and waiver of the Kansas examination. He had successfully taken the professional engineering examination in Georgia. He moved to Florida and received a Florida license through reciprocity. At the time he sought a license in Kansas, he had allowed his Georgia license to expire.

The Kansas State Board of Technical Professions (BTP) had what it referred to as a written internal policy:

" 'The Kansas board shall not approve an application for license as a Professional Engineer . . . by comity with another state board if the applicant's original license has been revoked by the state board of original license or suspended . . . or if the applicant has allowed his or her original license to lapse or expire.' " *Bruns*, 255 Kan. at 729.

Based on the expiration of Bruns' Georgia license, the BTP refused to license him as a professional engineer in Kansas. The version of K.S.A. 74-7024 applicable in *Bruns* stated, in part:

"(a) Any person who holds a current license or certificate of qualification or registration to practice any branch of the technical professions issued by the proper authority in any other state or political subdivision of the United States or in any other country may be exempted from examination for licensure in this state if the requirements under which said license or certificate was issued are of a standard accepted by the board and if the person's record fully meets the requirements of this state in all respects other than examination."

On appeal, we examined whether the BTP properly interpreted K.S.A. 74-7024(a) in applying an internal policy to deny Bruns a license. We pointed out that K.S.A. 77-425 says that "[a]ny rule and regulation not filed and published as required by this act shall

be of no force or effect." We then concurred with the Court of Appeals' reasoning that K.S.A. 77-415(4), defining rules and regulations, "characterizes a rule or regulation as a statement of policy of general application that has the effect of law." 255 Kan. at 733. We agreed with the Court of Appeals' finding that the BTP's internal policy was a "rule" or "regulation" as defined by statute (255 Kan. at 734) and held that the BTP treated the policy as having the effect of law:

"The BTP's internal written policy is the type of requirement that should receive public dissemination. Professional licenses affect the ability to earn a living. We note that Bruns was not informed of the BTP's written policy which formed the basis of the denial until August 1, 1990. He filed his application in November 1989." 255 Kan. at 737.

We remanded to the BTP, observing that on remand, the BTP may deny Bruns' application for reciprocity if it determines that the requirements under which his Florida license was issued do not meet the BTP's standards. 255 Kan. at 736. The holding in *Bruns* does not support the drivers' contentions here.

The issue of whether the breathalyzer manufacturer's operating manual is a rule or regulation that should be filed with the Secretary of State under the facts here has not been addressed in Kansas. We conclude the manual is neither a K.S.A. 77-415 rule or regulation nor a document which is adopted by reference by a rule or regulation. K.S.A. 77-416(a).

Other jurisdictions have examined similar issues. See, *e.g., State v. Straka,* 116 Wash. 2d 859, 810 P.2d 888 (1991); *State v. Garthe,* 145 N.J. 1, 678 A.2d 153 (1996). In *Straka,* Straka was arrested for driving while intoxicated. He failed two breath tests. He filed a motion to suppress the test results on the grounds that the state toxicologist failed to properly promulgate written procedures and protocols for test evaluations. In addition, Straka argued that the state toxicologist failed to properly promulgate written procedures for the formulation, testing, and use of the simulator solution used in the equipment. He claimed that: (1) these alleged failures violated court rules and the Washington Administrative Code, and (2) the testing protocols were rules and, therefore, must be published.

The *Straka* court found that the testing procedures did not constitute rules within the meaning of the Washington Administrative Procedure Act. Thus, it was unnecessary to publish them. 116 Wash. 2d at 870. The court held that the methods of breath testing did not establish, alter, or revoke the "requirement" that a person consents to a breath test by exercising the privilege to drive. 116 Wash. 2d at 869.

The New Jersey Supreme Court in *Garthe* addressed a similar issue. Garthe argued that the State failed to comply with the procedural and substantive due process requirements of the New Jersey Administrative Procedure Act (Act). Garthe contended that the testing protocols for breathalyzers were required to be adopted under the Act.

The *Garthe* court concluded that the police procedures for testing breathalyzer equipment were more like "an intra-agency memorandum than rulemaking." 145 N.J. at 7. *Garthe* noted that "[r]egulations generally are needed when the affected public must conform its conduct with the governmental directive" and pointed out that while the promulgation of testing procedures ultimately affects the general public, the agency action does not shape the conduct of the public. 145 N.J. at 7. We agree. The drivers urge us to distinguish *Straka* and *Garthe,* arguing that the statutes involved and definitions of "rule" and "regulation" are different than those in play here. The differences, however, do not deter application of the persuasive reasoning of each case here.

The district court observed: (1) When the KDHE created an officers' training manual, it approved a testing protocol based on the manufacturer's directions (the KDHE training manual is not to be confused with the breathalyzer manufacturer's operating manual at issue here) and (2) the training manual is available for purchase from the KDHE. Like the situations in *Straka* and *Garthe,* the breathalyzer manufacturer's operating manual is not intended to control the conduct of the public. Rather, it functions as a reference tool for the police officers who administer the test.

Unlike the circumstances in *Bruns*, the manufacturer's breathalyzer operating manual does not have the effect of law; it is informational in nature. The legislature has enacted provisions, in-

dependent of the KDHE's administrative regulations, in which breath tests are directed to be conducted under the KDHE protocols. K.S.A. 1999 Supp. 8-1002(a)(3) says:

"With regard to failure of a breath test, in addition to those matters required to be certified under subsection (a)(2), that: (A) The testing equipment used was certified by the [KDHE]; (B) *the testing procedures used were in accordance with the requirements set out by the [KDHE]*; and (C) the person who operated the testing equipment was certified by the [KDHE] to operate such equipment." (Emphasis added.)

The testing procedures mentioned in 8-1002(a)(3) are included in the KDHE's training manual. It is unnecessary for the breathalyzer manufacturer's operating manual to be filed either as a KDHE rule or regulation or as a document adopted by reference in a rule or regulation.

## DUE PROCESS

We now turn to consider the drivers' due process claims. The drivers assert that because the breathalyzer manufacturer's operating manual has not been filed under K.S.A. 77-416(a), their due process rights under the Fourteenth Amendment to the United States Constitution are being violated. We disagree.

The due process issue involves a question of law, over which we have de novo review. See *City of Wichita v. McDonald's Corp.*, 266 Kan. 708, 722, 971 P.2d 1189 (1999).

The drivers suggest that "[e]ven if the court were to find that the manufacturing manuals, the protocols, and written policies utilized by KDHE comply with the Rules and Regulations Act, . . . they still fail for vagueness and lack of notice under the due process requirements of the Constitution." The drivers cite no authority for this argument.

In its memorandum opinion, the district court found:

"The publication of the legislative enactments such as K.S.A. 8-1001 *et seq.* and K.A.R. 28-32-1 *et seq.* satisfy the notice requirement even if they do not state the testing protocol in toto or adopt it by reference. The administrative hearing process and appeal to district court procedure certainly provide a meaningful opportunity to be heard."

We agree.

The drivers do not deny that they: (1) were given oral and written notice of the consequences of submitting or not submitting to a breath test and (2) were served the appropriate forms, which provided notice of how they could challenge the proposed suspension of their driver's licenses. They were afforded hearings and de novo review by the district court.

The drivers had the opportunity to attack the validity of the breath tests by showing technical problems between the breathalyzer and the KDHE's protocol. Although they obtained copies of the KDHE's protocol (the KDHE training manual), the drivers chose not to argue whether the machine functioned properly or whether its operators were properly certified. We find no due process violations.

### Buettgenbach's Individual Claim

The final question is limited to Buettgenbach. He argues that the testing officer did not administer a valid breath test. He bases this contention on the fact that the officer was not familiar with the breathalyzer manufacturer's operating manual. This contention lacks merit.

The question of whether an adequate evidentiary foundation was laid is left largely in the discretion of the district court. Thus, the standard of review is abuse of discretion. See *State v. Almond*, 15 Kan. App. 2d 585, 588, 811 P.2d 529 (1991) (officer was certified as an operator but had not read the manufacturer's directions for the Intoxilyzer 5000, no abuse of discretion in holding the machine was operated correctly).

This issue is a rewording of our primary issue. In his petition for review of the administrative suspension order, Buettgenbach argued:

"The testing of Plaintiff was done under rules and regulations adopted in a statutorily incorrect and unconstitutional manner and as a result, it was impossible for the Hearing Officer to determine if the testing equipment was reliable, that the person who operated the testing equipment was qualified and that the testing procedures used were reliable."

We have held it was unnecessary to file the breathalyzer manufacturer's operating manual either as a KDHE rule or regulation

or as a document adopted by reference. K.S.A. 77-416. Here, the parties stipulated that the officer was certified to administer the test. The drivers fail to show an abuse of discretion.

Affirmed.