(145 P.3d 938)
No. 95,245

STATE OF KANSAS, *Appellee,* v. DONALD A. BECKER, *Appellant.*

Opinion filed November 9, 2006.

*Michael S. Holland* and *Michael S. Holland, II,* of Holland and Holland, of Russell, for appellant.

*David J. Basgall,* county attorney, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., MALONE and CAPLINGER, JJ.

MARQUARDT, J.: Donald A. Becker appeals the trial court's denial of his motion to suppress the results of a breath test. We affirm.

In December 2004, Detective Asher White stopped Becker's vehicle for driving without headlights. On approaching Becker's truck, Detective White detected a strong odor of alcohol coming from inside the vehicle. Detective White checked Becker's driver's license, which was a commercial license. In response to questioning, Becker admitted he had consumed alcohol at a club earlier that night. Detective White noted Becker had bloodshot eyes and slurred speech and requested Becker perform three field sobriety tests. Becker completed the walk-and-turn test with some difficulty and the finger-to-nose test. He failed to complete the one-legged balance test. At that point, Detective White called for back-up, and Deputy Brad Ricke arrived. Deputy Ricke advised Becker of the preliminary breath test warnings and then administered a preliminary breath test, which Becker failed.

Based on Detective White's training and experience, he determined Becker was under the influence of alcohol and transported Becker to the law enforcement center for further testing. At the center, Detective White read the implied consent notice to Becker and provided him with a copy of the notice. Provisions applicable to commercial licenses were printed on the back of the notice, but Detective White did not read the back of the form to Becker. The notice Detective White read to Becker informed him that a test failure would result in a suspension of his driving privileges for 30 days. The notice Detective White read to Becker, however, did not inform him that his commercial driver's license would be suspended for 1 year if he failed the test.

Following the required 20-minute observation period, Becker submitted to a breath test on the Intoxilyzer 5000, which he failed. The test results indicated Becker's breath alcohol concentration was 0.168 grams of alcohol per 210 liters of breath.

Becker filed a motion to suppress the breath test results. The trial court held a hearing and denied Becker's motion in part, disagreeing with Becker on two issues. The trial court permitted the parties to file briefs on the remaining issue concerning whether the implied consent notice misinformed Becker of the law, thereby violating his due process rights and warranting suppression of the breath test.

After receiving the parties' briefs on the issue, the trial court ruled that Becker's due process rights were not violated by the implied consent notice given. Relying on *State v. Singleton*, 33 Kan. App. 2d 478, 104 P.3d 424 (2005), the trial court determined that the implied consent notice does not shock the conscience even though the notice applicable to a person driving a noncommercial vehicle does not include notice that the person's commercial driver's license will be suspended for 1 year following a test failure. The trial court denied Becker's motion to suppress.

Before trial, Becker and the State submitted a stipulation of facts and waiver of jury trial. In the stipulation, Becker objected to allowing any evidence that would have been suppressed had the trial court granted his motion. The trial court found Becker guilty of driving while under the influence of alcohol in violation of K.S.A.

8-1567(a)(2). The trial court sentenced Becker on September 7, 2005. Becker timely appeals.

Becker argues his substantive due process rights were violated because the implied consent notice Detective White read to him prior to the breath test misstated the law. Becker alleges that the warnings required by K.S.A. 2005 Supp. 8-1001(f) are legally incorrect and misleading. Becker recognizes that Detective White was not required by statute to advise him of the ramifications the test would have on his commercial driver's license. Becker, however, argues that if the legislature chooses to require warnings concerning the consequences of test refusal and test failure, it must include all the consequences. By only requiring notice concerning a noncommercial driver's license, the driver is misled regarding the consequences to his commercial driver's license.

The State contends the notice that Detective White read to Becker accurately stated the law. The State agrees that Detective White was not required by K.S.A. 2005 Supp. 8-1001(g) to provide Becker the notice applicable to suspension of a commercial driver's license because he was not driving a commercial vehicle at the time of the stop. Questioning Becker's reliance on substantive due process, the State notes that it has a valid interest in the regulation of an individual's driving privileges.

This court reviews the factual findings underlying the trial court's suppression of evidence decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those factual findings by a de novo standard. *State v. Rupnick*, 280 Kan. 720, 727, 125 P.3d 541 (2005). When the material facts to a trial court's decision on a motion to suppress are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). Additionally, whether a defendant's due process rights were violated is a question of law over which an appellate court has de novo review. *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 89, 11 P.3d 1165 (2000).

K.S.A. 2005 Supp. 8-1001 authorizes the Kansas Department of Revenue to suspend an individual's driving privileges. The law provides that when a person operates a motor vehicle in Kansas, the

person gives his or her consent to submit to chemical testing to determine the presence of alcohol. K.S.A. 2005 Supp. 8-1001(a).

Under K.S.A. 2005 Supp. 8-1001(f), an officer must provide the driver of a noncommercial vehicle certain notices, orally and in writing, before administering a chemical test. Specifically, under K.S.A. 2005 Supp. 8-1001(f)(D), the officer must provide notice that "if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person's driving privileges will be suspended for one year for the first occurrence." Further, under K.S.A. 2005 Supp. 8-1001(f)(E), the officer must provide notice of the following: "if the person submits to and completes the test or tests and the test results show an alcohol concentration of .08 or greater, the person's driving privileges will be suspended for 30 days for the first occurrence."

K.S.A. 8-2,145 provides that an officer must inform a driver that the individual's commercial driver's license will be suspended for 1 year following a failure to submit to testing or a test result indicating an alcohol concentration of .04 or greater for the first offense. K.S.A. 2005 Supp. 8-1001(g) only requires an officer to provide this notice regarding a commercial driver's license when the "officer has reasonable grounds to believe that the person has been driving a commercial motor vehicle." Otherwise, the officer need only provide the notices applicable to a noncommercial driver's license, which are contained in K.S.A. 2005 Supp. 8-1001(f). K.S.A. 2005 Supp. 8-1001(g) also provides that "[a]ny failure to give the notices required by K.S.A. 8-2,145 and amendments thereto shall not invalidate any action taken as a result of the requirements of this section."

In 2003, the legislature amended K.S.A. 8-2,142. L. 2003, ch. 42, sec. 7. Before the amendment, a driver's commercial license was subject to a 1-year suspension for test refusal or test failure only when the individual was driving a commercial vehicle at the time of the stop. K.S.A. 8-2,142. Because of the amendment, however, the law currently provides for a 1-year suspension of a driver's commercial license following a test refusal or test failure even when the individual is stopped driving a noncommercial vehicle. K.S.A.

2005 Supp. 8-2,142. The legislature did not choose to amend the required notices to include a notice of the 1-year suspension of a person's commercial driver's license when the individual is stopped driving a noncommercial vehicle. K.S.A. 2005 Supp. 8-1001(g).

Although recognizing that Kansas courts have held inadmissible evidence obtained in violation of an individual's rights under K.S.A. 8-1001, the State argues suppression of the breath test here is unwarranted. In *State v. Kelly*, 14 Kan. App. 2d 182, 190-91, 786 P.2d 623 (1990), the police denied Kelly the right to consult with counsel in violation of K.S.A. 8-1001(f)(1)(E) (now K.S.A. 2005 Supp. 8-1001 [f][I]). This court determined that suppression of the breath test was the proper remedy for the violation. 14 Kan. App. 2d at 191-92. In *State v. Luft*, 248 Kan. 911, 912, 811 P.2d 873 (1991), the police failed to completely advise Luft of his statutory rights under K.S.A. 1990 Supp. 8-1001(f). Following *Kelly*, the court ruled the blood alcohol test must be suppressed. *Luft*, 248 Kan. at 913. The State, however, contends the facts in these cases are distinguishable from the instant facts because Detective White informed Becker of the statutory warnings; therefore, suppression is not warranted.

In arguing the notice was misleading and inaccurate, Becker distinguishes *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 840 P.2d 448 (1992) and *State v. Kristek*, 14 Kan. App. 2d 77, 781 P.2d 1113 (1989). Becker asserts that this issue is one of first impression.

Becker discusses *Meigs* but asserts the issue is distinguishable from his issue. In *Meigs*, the officer erroneously informed Meigs her driving privileges would be suspended for at least 180 days if she refused to submit to testing. The legislature had recently amended the statute, however, and the officer should have informed Meigs her driving privileges would be suspended for at least 1 year if she refused to submit to testing. 251 Kan. at 678-79. Becker argues his case is distinguishable because Detective White correctly provided him the warnings required by statute, but the warnings were misleading and misstated the law as it applies to a commercial license.

Becker also distinguishes *Kristek*, in which the trial court suppressed the results of a breath test because the officer failed to

record in writing whether Kristek requested an independent blood alcohol test. Reversing the trial court's suppression order, this court explained that K.S.A. 8-1001 *et seq.* contains no such requirement. 14 Kan. App. 2d at 80. This court emphasized that Kansas courts have been reluctant to impose on officers requirements that are not contained in the statute. 14 Kan. App. 2d at 79. Determining K.S.A. 8-1001(f) contains all the requirements the legislature intended to impose on officers, this court held it was without authority, absent constitutional reason, to impose a new requirement under the statute. 14 Kan. App. 2d at 80. Becker argues his case is distinguishable because, unlike Kristek, he is not arguing for suppression of the breath test based on a belief that the officer should have done something that was not statutorily required.

Based on his assertion that this is a case of first impression, Becker fails to cite any cases discussing substantive due process rights. Rather, Becker cites *Standish v. Department of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984), and asserts the implied consent warnings are designed to assist a licensee in making an informed decision whether to submit to a chemical test. Under the facts of the case, an officer advised Standish of his *Miranda* warnings prior to requesting that he submit to a chemical test to determine the presence of alcohol. The officer, however, failed to explain the inapplicability of the right to counsel when determining whether to submit to testing. The court ruled that the *Miranda* warnings, without further explanation from the officer, confused Standish; therefore, his refusal to submit to testing was reasonable. 235 Kan. at 905. Becker argues that the notice provided in this case was even more misleading than the warnings provided in *Standish*.

Because the facts in *Standish* are considerably different from the facts in this case, *Standish* provides little guidance. The notice Detective White provided to Becker was in accordance with the law pursuant to K.S.A. 2005 Supp. 8-1001 and advised Becker of the impact a test failure would have on his noncommercial driving privileges.

Although Becker further asserts his entire " 'driving privileges' " were subject to a minimum 1-year suspension, as opposed to only

a 1-year suspension of his commercial driving privileges, his contention is without merit. K.S.A. 8-2,145(a) provides:

"Whenever a law enforcement officer has reasonable grounds to believe a person has been driving a commercial motor vehicle while having alcohol or other drugs in such person's system and the person refuses to submit to and complete a test or tests requested by a law enforcement officer or submits to and completes a test requested by a law enforcement officer which determines that the person's alcohol concentration is .04 or greater, the person will be disqualified from driving a *commercial* motor vehicle for at least one year, pursuant to Kansas law." (Emphasis added.)

K.S.A. 2005 Supp. 8-2,142(k), however, provides: "If otherwise eligible, . . . the licensee may be issued a noncommercial driver's license for the period of suspension, revocation, cancellation or disqualification of the commercial driver's license." Therefore, only Becker's commercial license is subject to a 1-year suspension. K.S.A. 8-2,145(a). After the 30-day suspension period for his noncommercial license, he can apply for a noncommercial driver's license under K.S.A. 2005 Supp. 8-2,142(k).

The State cites *Darling v. Kansas Water Office*, 245 Kan. 45, 774 P.2d 941 (1989), for a discussion of substantive due process. Substantive due process protects an individual from arbitrary action, and the applicable standard is one of reasonableness. Analyzing a substantive due process claim requires balancing " 'the nature of the individual interest infringed, the importance of the government interest furthered, the degree of infringement and the sensitivity of the government entity responsible for the action to more carefully tailored alternative means of achieving its goal.' [Citation omitted.]" 245 Kan. at 51.

"The right to drive a motor vehicle on the public streets is not a natural right but a privilege, subject to reasonable regulation in the public interest." *Standish*, 235 Kan. at 904. The State has an important interest in regulating the driving privileges of licensees. The suspension of an individual's driving privileges is part of the civil regulatory scheme designed to foster public safety by suspending the driving privileges of those individuals who have exhibited dangerous driving behavior. *State v. Mertz*, 258 Kan. 745, 759, 907 P.2d 847 (1995). Furthermore, the legislature has enacted a

comprehensive statute designed to provide notice to a licensee before he or she submits to chemical testing. See *Kristek*, 14 Kan. App. 2d at 79.

Notice is a procedural right rather than a substantive right. Becker has failed to provide any authority that suggests he has a substantive due process right involving an implied consent notice. In reviewing the factors set forth in *Darling*, 245 Kan. at 50, we find that Becker suffered no violation of his substantive due process rights.

Affirmed.