(220 P.3d 379)
No. 101,494

CHRISTOPHER G. CUTHBERTSON, *Appellant*, v. KANSAS
DEPARTMENT OF REVENUE, *Appellee*.

Opinion filed
December 4, 2009.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, for the appellant.

*James G. Keller*, of Kansas Department of Revenue, for the appellee.

Before STANDRIDGE, P.J., PIERRON and BUSER, JJ.

PIERRON, J.: Christopher G. Cuthbertson appeals the district court's judgment affirming the administrative suspension of his driver's license and resulting lifetime suspension of his commercial driver's license. Cuthbertson claims the police officer misinformed him that a failure of the breath test would have the same conse-

quences for both his regular driver's license and his commercial driver's license (CDL).

Officer Phil Hendrickson arrested Cuthbertson on July 22, 2007, for driving under the influence (DUI). Cuthbertson had a commercial driver's license, but was driving a noncommercial vehicle when he was arrested. Pursuant to K.S.A. 2007 Supp. 8-1001(f), Hendrickson provided Cuthbertson implied consent advisories in both oral and written form. At the scene after the arrest, Cuthbertson agreed to take the breath test at the station. Hendrickson transported Cuthbertson to the police station.

Before taking the breath test at the station, Cuthbertson asked what effect a test failure would have on his CDL. Hendrickson's response was captured on the video at the police station. The parties disagree slightly, but not substantively, about the content of the video:

"CUTHBERTSON: What will this do to my CDL?

"HENDRICKSON: You weren't driving a commercial vehicle. If you were driving a commercial vehicle, then the level drops to .04.

"CUTHBERTSON: All right.

"HENDRICKSON: Ok.

"CUTHBERTSON: So, I won't be able . . .

"HENDRICKSON: Well, it'll, I mean your license . . . .

"CUTHBERTSON: Right, right. I understand that part of it.

"HENDRICKSON: It's going to affect your license the same way. Now, as far as, does that answer your question?

"CUTHBERTSON: Yeah, I just, I didn't know, you know, I suppose it's the same way if you lose your license on a class A, or a class C, or whatever it is. I've had a CDL forever."

Cuthbertson agreed to take the blood alcohol test and blew a .105 in the Intoxilyzer. Hendrickson certified Cuthbertson's failure to the Kansas Department of Revenue (KDOR) and his license was suspended for 1 year and his CDL was suspended for life. Cuthbertson's suspension was upheld during an administrative hearing and also after a trial in the district court. The only issue raised on appeal involves Cuthbertson's claim that he was incorrectly advised of the consequences of a test failure regarding his

CDL and that his driving privileges should be fully reinstated. On this issue, the district court stated as follows:

"The appropriate implied consent advisory forms were given to the defendant orally and in writing. Defendant then made inquiry regarding his commercial driver's license. Trooper Hendrickson's response was so vague as to be undecipherable [*sic*] by the Court. I cannot, however, conclude that the response was wrong, improper, inconsistent or incorrect. What I do know is that the proper forms were read to the defendant, and he had an opportunity to follow along as the forms were read. The defendant later asked a question about the content of the form, and the trooper gave an indistinct response. That indistinct response does not constitute a failure to substantially comply with statutory notice requirements.

. . . .

"The arresting officer substantially complied with implied consent advisory requirements, and the gratuitous information, if any was provided to the plaintiff, does not constitute a failure to substantially comply with statutory notice requirements."

We have unlimited review over the question presently before us. Whether Cuthbertson's due process rights were violated is a question of law over which this court has de novo review. See *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 89, 11 P.3d 1165 (2000). The trial court made findings of fact that are reviewable by this court. An appellate court reviews the trial court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support the trial court's conclusions of law. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

We have previously held that when a person is stopped for a suspected DUI while driving a noncommercial vehicle, an officer is not required by statute to provide notice of the effect a breath-test failure will have on that person's commercial driver's license. See, *e.g.*, *Robinson v. Kansas Dept. of Revenue*, 37 Kan. App. 2d 425, 428, 154 P.3d 508 (2007); *State v. Becker*, 36 Kan. App. 2d 828, 832-33, 145 P.3d 938 (2006), *rev. denied* 283 Kan. 932 (2007).

As noted in *Becker*:

"K.S.A. 8-2,145 provides that an officer must inform a driver that the individual's commercial driver's license will be suspended for 1 year following a . . . test result indicating an alcohol concentration of .04 or greater for the first offense. K.S.A. 2005 Supp. 8-1001(g) only requires an officer to provide this notice re-

garding a commercial driver's license when the 'officer has reasonable grounds to believe that the person has been driving a commercial motor vehicle.' " 36 Kan. App. 2d at 832.

In the present case, Cuthbertson was not driving a commercial vehicle when he was stopped on suspicion of driving under the influence. The 1-year disqualification referenced in K.S.A. 8-2,145 is prescribed in K.S.A. 2007 Supp. 8-2,142(a). The legislature amended K.S.A. 8-2,142 in 2003. L. 2003, ch. 42, sec. 7. Before that amendment, a CDL was subject to a 1-year suspension for a test refusal or failure *only* when the person was driving a commercial vehicle when stopped. K.S.A. 8-2,142(a). The 2003 amendment expanded the scope of the suspension to apply to a CDL even when the person was stopped while driving a noncommercial vehicle. See K.S.A. 2007 Supp. 8-2,142(a)(2). Importantly, the legislature did not choose to amend the required implied consent notices to include notice of the 1-year suspension of a CDL when the person is stopped while driving a noncommercial vehicle. See K.S.A. 2007 Supp. 8-1001(f). *Robinson*, 37 Kan. App. 2d at 428. Accordingly, Officer Hendrickson was not required to give Cuthbertson the notifications set forth in K.S.A. 8-2,145(a).

Officer Hendrickson gave Cuthbertson gratuitous information concerning the ramifications to his CDL. The trial court found the information was "so vague as to be undecipherable [*sic*]." The court's finding in this regard is not supported by the evidence. When Cuthbertson asked what would happen to his CDL, it is undisputed that Officer Hendrickson clearly and unambiguously stated, "It's going to affect your license the same way." Officer Hendrickson's statement was an incorrect statement of the law. As a second offense DUI, Cuthbertson's refusal of a breath test would carry a suspension of his regular driver's license for 2 years and a test failure would result in a suspension for 1 year. K.S.A. 2007 Supp. 8-1001(f)(4), (6). Because it was a second offense DUI, Cuthbertson's CDL was going to be suspended for life whether he refused the test or whether he failed the test. K.S.A. 2007 Supp. 8-2,142(c) ("A person shall be disqualified for life [for commercial driving privileges] upon the second or a subsequent occurrence of any offense, test refusal or test failure specified in subsection [a],

or any combination thereof, arising from two or more separate incidents.").

The question arising in this case is what consequence does the misinformation have on nonmandated notices. It is necessary to outline several Kansas cases to resolve this question. The benchmark case in the area of incorrect notifications prior to a DUI breath test is *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 840 P.2d 448 (1992). The Supreme Court held that the officer did not substantially comply with the mandatory implied consent notices when he incorrectly informed Meigs that a test refusal would result in a suspension of her license for at least 180 days, as the statute had been amended to mandate a suspension of at least 1 year. 251 Kan. at 678-81. Both the written and orally read forms incorrectly advised Meigs of the risk for refusing to submit to testing. 251 Kan. at 679. The *Meigs* court affirmed the district court's suppression of Meigs' breath results. 251 Kan. at 683.

In *Robinson*, 37 Kan. App. 2d 425, the police initiated a stop of a noncommercial vehicle driven by Robinson. He was arrested for DUI and given the proper oral and written implied consent notices on the DC-70 form. The trooper did not advise Robinson as to how a test failure, test refusal, or DUI conviction would affect his New Mexico CDL. On appeal, Robinson argued that his procedural due process rights were violated because the officer did not warn him how a test failure would affect his CDL under K.S.A. 2006 Supp. 8-2,142. In rejecting this argument, the *Robinson* court found that Robinson had received all of the notices required under K.S.A. 2006 Supp. 8-1001(f) before he submitted to the breath test, and that he "was afforded two opportunities, the administrative hearing and the de novo review before the district court, to contest the finding that he failed the [breath] test." 37 Kan. App. 2d at 429. Robinson used *Meigs* as support for his argument, but the court found that case distinguishable. "Robinson attempts to apply *Meigs* without acknowledging a crucial distinction: the notices at issue in *Meigs* were statutorily required, whereas the notice at issue here was not." 37 Kan. App. 2d at 428.

In *Standish v. Department of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984), an officer advised Standish of his *Miranda* warnings

prior to requesting that he submit to a chemical breath test, without explaining the inapplicability of the right to counsel when determining whether to submit to testing. The Kansas Supreme Court concluded that because the *Miranda* warnings, without further explanation from the officer, confused Standish, his refusal to submit to testing was reasonable. 235 Kan. at 905.

In *State v. Branscum*, 19 Kan. App. 2d 836, 877 P.2d 458, *rev. denied* 255 Kan. 1004 (1994), an officer provided Branscum with an outdated consent form that indicated a penalty for an alcohol concentration of .10 or greater instead of .08 or greater. However, the officer advised Branscum that the form was incorrect and the new legal limit was .08. The district court suppressed the blood alcohol test. On appeal, Branscum relied on *Meigs* in an attempt to persuade this court that an incorrect written notice cannot substantially comply with the statute. Unconvinced, this court reversed the district court and held that the officer's verbal correction brought the notice into statutory compliance even though the written consent form contained incorrect information. 19 Kan. App. 2d at 840-41.

Finally, in *State v. Kogler*, 38 Kan. App. 2d 159, 163 P.3d 330 (2007), an officer read from an outdated consent form, which improperly advised Kogler that K.S.A. 2005 Supp. 8-1001(f) contained a 5-year look-back period. The district court granted Kogler's motion to suppress his breath test results because the arresting officer had failed to give Kogler proper notice. On appeal, this court agreed. 38 Kan. App. 2d at 163-64. Distinguishing *Branscum*, the *Kogler* court determined that the outdated consent form failed to provide Kogler "with knowledge that the look back period had been changed to a person's lifetime." 38 Kan. App. 2d at 163.

The KDOR also relies heavily on the Court of Appeals decision of *Shields v. Kansas Dept. of Revenue*, No. 90,344, unpublished opinion filed August 13, 2004. Shields refused a breath test after receiving the proper warnings. But Shields claimed he had been misled when he spoke with the police officer regarding his driving record and possible consequences before the police officer gave Shields another opportunity to submit to the breath test. Shields refused a second time. The KDOR claims *Shields* is significant

because this court stated that Shields had already refused the test before hearing the misleading information, "The biggest factor in determining whether Shields' rights were violated is that Shields expressly refused to submit to the breath test prior to being given any allegedly misleading or erroneous information by Officer Ross." *Shields*, slip op. at 4. Applying *Shields*, the KDOR argues Officer Hendrickson's gratuitous information was inconsequential after Cuthbertson had already agreed to take the test.

The purpose of the implied consent law is to coerce submission to chemical testing by the threat of statutory penalties of license suspension and the admission into evidence in a DUI proceeding of the fact of refusal. *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, Syl. ¶ 1, 888 P.2d 832 (1995). However, this incentive is not as great in the CDL context because the statutory penalties are the same for refusing *or* failing a breath test, *i.e.*, a first refusal or failure results in a 1-year suspension and a second or subsequent refusal or failure results in disqualification for life. K.S.A. 2007 Supp. 8-2,142(a)(1)(D), (c). For a regular driver's license, the penalties for failing the breath test for second violations and beyond are more lenient than a refusal, except for the fifth test failure. K.S.A. 2007 Supp. 8-1001(f).

Is the result in *Robinson* the same if the facts are changed to bring them one step closer to the situation in *Meigs, Kogler,* and *Standish* by adding the fact of an incorrect statement regarding penalties to a commercial driver's license? Cuthbertson received all the statutory notices required by law. See K.S.A. 2007 Supp. 8-1001(f). Officer Hendrickson was not required to provide any information to Cuthbertson regarding the collateral damage to his CDL. See *Robinson*, 37 Kan. App. 2d at 428. However, once Officer Hendrickson dove into the pool of gratuitous information, his responses are required to be correct statements of the law. Even in this situation, however, we revert to the fact that we are not dealing with statutorily mandated notices. The consequence is that Cuthbertson must demonstrate prejudice, which he cannot, in order to show reversible error.

We are persuaded by KDOR's argument proposing something akin to a harmless error analysis. See *Drake v. Kansas Dept. of*

*Revenue,* 272 Kan. 231, 238, 32 P.3d 705 (2001) (Harmless error is error which does not prejudice the substantive rights of a party. It affords no basis for reversal of a judgment and may be disregarded.). If Officer Hendrickson had correctly stated that the only way Cuthbertson could avoid a lifetime disqualification from driving commercial vehicles was to take the test and post an alcohol content of less than .08, then presumably Cuthbertson would have taken the test—just as he in fact did. The case at bar is distinguishable from nearly all the cases cite above: *Meigs, Standish,* and *Shields* involved refusals; *Kogler* demonstrated prejudice because the failure resulted in a longer look-back period; and *Branscum* demonstrated prejudice because the legal limit was .08 instead of .10.

The answer to the question previously raised is: Yes. Under the facts of this case, the result is the same as *Robinson.* The collateral consequences in this case were not a result of Cuthbertson being misinformed by Officer Hendrickson, but rather the result of his violation of the law. Cuthbertson can demonstrate no prejudice as a result of the misinformation provided by Officer Hendrickson where Cuthbertson received gratuitous information that was in no way mandated by the implied consent advisories.

Affirmed.