(843 P.2d 280)
No. 67,888

WESLEY E. McROBERTS, *Appellant,* v. KANSAS DEPARTMENT OF REVENUE, *Appellee.*

Opinion filed December 4, 1992.

*Forrest A. Lowry,* of Robert W. Green, Chartered, of Ottawa, for appellant.

*Colleen R. Harrell,* legal intern, and *Brian Cox,* of Kansas Department of Revenue, for appellee.

Before BRAZIL, P.J., LARSON, J., and BILL D. ROBINSON, JR., District Judge, assigned.

BRAZIL, J.: Wesley E. McRoberts appeals from the suspension of his driver's license, contending the trial court incorrectly stated the issue and the Kansas Department of Revenue (KDR) failed to prove McRoberts did not intend to take the breath test. We affirm.

McRoberts was stopped by Deputy Ken Glasscock on suspicion of driving while under the influence of alcohol. At that time, McRoberts took a preliminary breath test and was then arrested by Glasscock and taken to the sheriff's office.

At the sheriff's office, McRoberts agreed to take another breath test. It is undisputed that it was very warm in the sheriff's office

that night, and McRoberts was uncomfortable and sweating from the heat. McRoberts testified that he voluntarily wiped the sweat from his face with his T-shirt.

Prior to taking the second test, McRoberts had to undergo a 20-minute observation period. McRoberts was given instructions concerning his actions during that 20-minute period. Glasscock testified that he did not remember his exact instructions to McRoberts, "but as is my norm or custom, don't eat, drink, smoke or chew anything, put anything in, on or about your mouth, don't belch, regurgitate, vomit, cough, anything of that nature, don't even as much as bite your fingernails. That's normal for my instructions."

Glasscock testified that he began the first 20-minute observation period at 1:46 a.m. McRoberts belched at 1:50 a.m. The second observation period then began and lasted until approximately 1:54 a.m., when McRoberts coughed. The third observation period began immediately and it lasted until 2:03 a.m., when, in Glasscock's opinion, McRoberts feigned the need to vomit. During the preceding time period, Glasscock had repeatedly warned McRoberts not to "put anything in, on, or about your mouth."

McRoberts, despite the warnings, continually wiped his face with his T-shirt. Glasscock began a fourth observation period at 2:03 a.m. Glasscock, on his own initiative, provided a towel for McRoberts. Glasscock repeated his warning not to place "anything in or near your mouth or I'll take your license." Concerning the towel, he told McRoberts to wipe his head but to try not to put it up by his mouth. Glasscock testified that he gave McRoberts the towel to wipe his brow.

McRoberts wiped his mouth with the towel at 2:08 a.m. At that time, Glasscock stated: "[Y]ou just lost your license." Glasscock stated that he felt McRoberts refused to cooperate with preparations prior to the test.

McRoberts told Glasscock that he was not ill. McRoberts denied belching; however, he stated twice that he was drunk. McRoberts further denied doing anything to sabotage the test and testified he agreed to and intended to take the test.

The court found:

"2. To 'complete testing' requires the person do nothing to defeat or frustrate the testing procedures and comply with reasonable requirements and limitations preparatory to the person's actually blowing into the machine.

"3. The plaintiff repeatedly failed to comply with those reasonable requirements and limitations and was advised of the consequences of such failure and as such, his conduct constitutes a constructive refusal to submit to testing."

The court, therefore, denied McRoberts' petition for review of his driver's license suspension.

McRoberts argues that the issue is whether his failure to take the test flowed from an intent to refuse the test. He contends the trial court erroneously restated the issue as: "Did the plaintiff fail to take a breathalyzer test when requested to do so?" We agree with the trial court.

The use of the word "fail" by the trial court complies with K.S.A. 8-1013(i), which defines a test refusal as "a person's failure to submit to or complete any test, other than a preliminary screening test, in accordance with this act." Further, K.S.A. 8-1001(f)(2) provides: "Failure of a person to provide an adequate breath sample or samples as directed shall constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs." These sections read together indicate that a test refusal is to encompass express refusals, acts, or conduct which may be interpreted as express refusal.

In a case recently decided by this court, it was held that a test was not complete as required when the driver, Call, actually blew into the machine and produced "a breath alcohol measure of .124%" but "the printout further indicated the sample furnished was deficient." *Call v. Kansas Dept. of Revenue,* 17 Kan. App. 2d 79, 80, 831 P.2d 970 (1992), *rev. denied* 251 Kan. 937 (1992). Call's failure to provide an adequate breath sample constituted a refusal to take the test. 17 Kan. App. 2d at 82.

The trial judge's interchanging of "failure" and "refusal" was not error.

Finally, McRoberts contends the wording of K.S.A. 8-1013(i) places the burden upon KDR to prove Glasscock gave McRoberts the chance to complete the test and that McRoberts refused through intentional lack of cooperation to take the test. McRoberts

has not cited any authority for placing that specific burden of proof on KDR.

Admittedly, under K.S.A. 8-1002(a), the certification by the law enforcement officer must show that McRoberts was given the opportunity to take the test and that he either failed or refused it. However, under K.S.A. 8-1001(f)(2), McRoberts clearly had the burden of showing that his "failure [to complete the test] was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs." In this case, there was sufficient competent evidence to support the trial court's findings that McRoberts failed to complete the test and that his failure was not due to a medical condition.

McRoberts argues that none of his actions such as belching, coughing, sweating, or feeling queasy were at all unusual for a person under the influence of alcohol. Since these were the very actions that frustrated Glasscock's attempts to give McRoberts the test, no better argument can be made under K.S.A. 8-1001(f)(2) to support the trial court's finding that McRoberts failed to complete the test.

McRoberts also claims that, for the trial court to rule the way it did, it would have to conclude that McRoberts intended to frustrate the test. The cases in this area suggest otherwise.

"A conditional response such as, 'I want to talk to my attorney (or parent or relative or friend or some other third person) first,' is not a consent to take a breath or blood test. It is a refusal." *Standish v. Department of Revenue*, 235 Kan. 900, Syl. ¶ 2, 683 P.2d 1276 (1984). Also, a driver's silence when requested to submit to a chemical test for alcohol content of blood may constitute an express refusal to submit to the test. *In re Hamstead*, 11 Kan. App. 2d 527, Syl. ¶ 1, 729 P.2d 461 (1986).

Even if a person attempts to take the test but produces a deficient sample, the person is deemed to have refused the test. *Call v. Kansas Dept. of Revenue*, 17 Kan. App. 2d 79, Syl. ¶ 2.

To complete the test, McRoberts would have to have completed the 20-minute observation period and blown a sufficient sample into the breathalyzer. McRoberts' failure to complete the observation period meant he was unable to complete the testing and therefore is deemed to have refused to take the test. Glasscock gave McRoberts four chances to complete the testing procedure.

All four times McRoberts did something he was requested not to do.

"Whether there is a refusal to submit to a breath test is a question of fact, not of law. [Citation omitted.] The scope of appellate review is whether there is substantial competent evidence to support the findings of the court." *Call v. Kansas Dept. of Revenue,* 17 Kan. App. 2d at 82. The trial court's decision was supported by substantial competent evidence.

Affirmed.