NOT DESIGNATED FOR PUBLICATION

No. 123,380

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DARRELL E. RUSSELL,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed February 11, 2022. Affirmed.

*Bruce D. Mayfield*, of Bruce D. Mayfield, Chartered, of Overland Park, for appellant.

*Donald J. Cooper*, of Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

BUSER, J.:  This is an appeal from the district court's order affirming the Kansas Department of Revenue's (KDOR) suspension of Darrell E. Russell's driving privileges. On appeal, Russell contends the district court erred in suspending his driving privileges because his refusal to submit to an evidentiary breath test was reasonable under the circumstances. Upon our review we hold the district court did not err in finding that Russell refused the breath test, and the refusal was not reasonable. Accordingly, we affirm the KDOR's suspension of Russell's driving privileges.

1

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of November 28, 2018, Sergeant Thomas Keary, a 21-year veteran of the Overland Park Police Department was on routine patrol when he noticed a vehicle ahead of him traveling in the same direction. Sergeant Keary observed that while his police vehicle was traveling at 50 miles per hour in a 45 mile per hour zone, the other vehicle was pulling away from him and was traveling "significantly quicker than me." The Sergeant activated his vehicle's emergency equipment to make a traffic stop. He had to exceed 75 miles per hour to catch up to the vehicle. The vehicle was slow to respond but finally stopped about two and a half minutes later.

Sergeant Keary identified the driver as Russell. Russell had bloodshot, glassy eyes with an odor of alcohol coming from his vehicle. He was also slow to answer the Sergeant's questions. In response to Sergeant Keary's question if Russell had anything to drink, he replied, "'Probably more than I should.'"

Officer Lucas Neff, a four-year veteran of the Overland Park Police Department, arrived at the scene and took over the investigation. Regarding the standardized field sobriety tests, Russell performed the walk-and-turn test with four indicators of possible alcohol impairment. The one-leg stand test resulted in another four clues of possible impairment. Officer Neff asked Russell to take a preliminary breath test. Russell refused the breath test. Russell did admit to having consumed alcohol that evening. All things considered, Officer Neff arrested Russell for driving under the influence of alcohol (DUI) and transported him to the police station.

At the police station, Officer Neff advised Russell of his *Miranda* rights, including his right to remain silent. See *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). After reading these rights aloud, Officer Neff asked Russell if he understood those rights and Russell indicated that he did. Officer Neff then stated that he

2

was going to read aloud the implied consent advisories, which are listed on the DC-70 form, to Russell. When Russell replied that he did not want to, the officer laid the document on Russell's lap. Officer Neff then read aloud the DC-70 form.

Next, Officer Neff asked Russell if he would take an evidentiary breath test. Russell did not respond but maintained eye contact with the officer. Officer Neff then "prompted him to respond" but Russell remained silent. Officer Neff told Russell he was going to let him think about it and come back later. As part of the evidentiary breath test observation period, Officer Neff asked Russell some other questions which included asking him to open his mouth and stick out his tongue to make sure there were no foreign substances in his mouth. Russell complied with the request. Russell never consented to take the evidentiary breath test, and he never verbally declined it. He simply did not respond to the officer's request. On the DC-27 and DC-70 forms Officer Neff recorded that Russell refused the breath test.

Later, Officer Neff asked Russell if he remembered his *Miranda* warnings and Russell nodded in the affirmative. Officer Neff told Russell he needed "'a verbal yes'" and Russell orally responded with, "'Yes.'" The officer then asked Russell if he wanted to talk with him or answer any questions and Russell "nodded" negatively. Officer Neff informed him that he needed a verbal yes or no and Russell replied, "'No.'"

Based on his refusal to take the evidentiary breath test, Russell's driving privileges were ordered suspended. Russell made a timely request for a hearing before a KDOR administrative hearing officer. Following an evidentiary hearing, the hearing officer affirmed the administrative action to suspend and restrict Russell's driving privileges. The hearing officer found that Russell "refused to submit to and complete a test as requested by a law enforcement officer." After exhausting his administrative remedies, Russell petitioned the district court for judicial review of his driver's license suspension.

3

The district court held an evidentiary hearing and Sergeant Keary and Officer Neff testified as summarized earlier. Additionally, Russell testified on his own behalf. Russell stated that on the morning of the traffic stop he was not speeding. He also delayed stopping upon seeing the police officer's emergency lights because "I didn't think I was speeding or doing anything so I shouldn't be stopped." Additionally, Russell testified to icy street conditions, so he attempted to find a safe area to stop. Russell admitted that he told the officers that he had "'less than five more than three'" drinks before the traffic stop.

Russell testified that he had reviewed a video of his interaction at the station with Officer Neff and that it "captures the whole thing." Russell's attorney showed him a transcript of the video recording taken at the police station. Russell testified that he had compared the transcript with the video recording, and they matched. The transcript was admitted in evidence. The video recording was not offered in evidence.

Regarding the implied consent advisories, Russell testified that the second advisory, which stated that there were administrative penalties for refusing a breath test or failing a breath test confused him. He testified,

> "It says, 'If you refuse to submit to and complete the test or tests or if you . . . fail, your driving privileges will be suspended for a period of at least 30 days and up to 1 year.' So it says if you do or you don't, it's the same penalty."

Russell explained, "It's somewhat common knowledge that, if you refuse, you've got more problems than if you don't. So to hear this saying if you do or you don't, it's the same penalty, it's like, 'Okay. He's an officer of the court. I'll take this . . .—as guidance.'"

According to Russell, when Officer Neff asked him if he was willing to take a breath test, Russell was "looking him dead in the eye." Then the officer said he needed a

yes or no answer; Russell testified he did not answer because he "was trying to exercise my right to be silent." Russell never told Officer Neff that he would or would not take the breath test. He also never informed the officer that he was invoking his right to remain silent. Russell never took the evidentiary breath test.

Numerous exhibits were admitted at the hearing, including the transcript of the videotape recording memorializing the interactions and conversations between Officer Neff and Russell at the police station. None of these exhibits are contained in the record on appeal.

The district court ruled from the bench and affirmed the KDOR's suspension of Russell's driving privileges. Relevant to this appeal, the district court addressed two issues. First, the district court stated,

> "In reviewing the DC-70, the Court must make a determination as to whether or not the DC-70 is in substantial compliance with the statute. Our Court has told us that substantial compliance doesn't mean exact, for word for word, but rather the necessary elements of the statutory framework are consistent within the notice. The Court finds that the DC-70, in this particular case, revised version of July 2018 is in substantial compliance with the statute. The plaintiff was advised that the refusal or failure could result in a range of penalties. The statutory framework is present in . . . this version of the DC-70. The Court finds that it is in substantial compliance with the statute."

Regarding the second issue relevant to this appeal, the district court stated,

> "[T]he Court will also comment on the right to remain silent. Again, *Miranda* is an issue of Fifth Amendment. The Fifth Amendment issues are not applicable when it comes to the testing; therefore, the plaintiff, Mr. Russell, could have submitted to the testing and remained silent. Could have nodded his head. Could've extended his arm for whatever equipment was necessary. He could have exercised both—could've remained silent and submitted to the test."

5

As a result, the district court found that any claim of confusion was not justified, and Russell's refusal was not reasonable.

In conclusion, the district judge stated,

> "For the purposes of the journal entry and so that there wouldn't be any confusion in the event that either of you appeal this to the Kansas Court of Appeals, my finding of fact is that the plaintiff refused to take the test and that my [conclusion] of law, based on the finding of fact, is that that was not a reasonable refusal."

Russell appeals.

## DID THE DISTRICT COURT ERR IN FINDING THAT RUSSELL REFUSED TO SUBMIT TO AN EVIDENTIARY BREATH TEST AND THE REFUSAL WAS NOT REASONABLE?

On appeal, Russell contends that his refusal to submit to the evidentiary breath test was reasonable because, under the circumstances, he was confused by Officer Neff's reading of *Miranda* rights and the implied consent advisories. On the one hand, Russell argues his refusal was reasonable because after he was advised of his right to remain silent, he was not informed of "any post-*Miranda* precautionary advice as required."

Second, Russell asserts that Officer Neff failed to substantially comply with providing the implied consent advisories because by also reading Russell his *Miranda* rights, the officer provided "misleading, contradictory, and confusing information."

Finally, Russell asserts that the officer's request for consent to the test was "seeking . . . a verbal response" that is "[c]ommunicative" because the driver's response "provides evidence of the very crime being investigated." Since communicative testimony is protected by the Fifth Amendment to the United States Constitution, Russell

6

argues his refusal by silence was reasonable. Russell bears the burden to show that his suspension should be set aside. See K.S.A. 2020 Supp. 8-1020(q).

In response, the KDOR contends Officer Neff "appropriately advised [Russell] of his rights and the consequences of failing to provide a breath test" and, therefore, Russell did not have reasonable grounds to refuse the breath test. The KDOR also argues Kansas courts should not "judicially amend the legislature's specific language and intent of the implied consent advisories" by imposing additional requirements on officers investigating DUIs.

We begin the analysis with our standard of review. Generally, our court will review a district court's decision in an administrative driver's license suspension by "ascertaining whether substantial competent evidence in the record supported the district court's factual findings and whether the conclusion derived from those findings is legally correct." *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). Issues which involve statutory and constitutional interpretation present a question of law subject to unlimited review. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015).

Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). Appellate courts do "not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019).

Under K.S.A. 2020 Supp. 8-1002(a)(1), the KDOR is directed to suspend a person's driving privileges when the following four conditions are met:

"(A) There existed reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol . . . ; (B) the person had been placed under arrest, was in custody or had been involved in a vehicle accident or collision; (C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto; and (D) the person refused to submit to and complete a test as requested by a law enforcement officer."

The district court found that Officer Neff met all four conditions for the suspension of Russell's driver's license. Of note, Russell does not challenge the district court's determination as to the first two conditions—that there existed reasonable grounds to believe that he was operating a vehicle while under the influence of alcohol and that he had been placed under arrest. As a result, Russell has abandoned any claims that his suspension was improper under these two conditions. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not briefed are deemed waived or abandoned).

Russell's appeal focuses on subsections (C) and (D) of K.S.A. 2020 Supp. 8-1002(a)(1) because the gravamen of his complaint appears to be that he reasonably refused to take the breath test because he was confused by receiving his *Miranda* rights and implied consent rights in the way Officer Neff presented them.

At the outset, Russell's argument is not a model of clarity. In his appellant's brief Russell repeatedly asserts that under the circumstances presented, "a driver's *refusal by silence* is reasonable." (Emphasis added.) Yet, at oral argument, when Russell's counsel was asked if his client refused to take the breath test, counsel replied, "No, Your Honor. My client chose to remain silent and provided no verbal or visual response to the question." We are left to speculate about whether Russell's argument is that his silence was, in fact, a refusal that was reasonable given his confusion, or that it was *not* a refusal to take the test but simply an invocation of his right to remain silent. For purposes of our analysis, we will consider Russell's argument as presented in his brief that his *refusal by silence* was reasonable under the circumstances.

8

There is another, more fundamental, problem with Russell's appeal. In ruling that Russell refused the breath test and that his refusal was not reasonable, the district court considered several exhibits submitted by Russell in support of his legal position. None of these exhibits were included in the record on appeal. Two of the exhibits, the DC-27 and DC-70 forms were attached to Russell's petition and are available to us for appellate review. However, plaintiff's exhibit No. 7, a transcript of the video recording which memorialized the actual conversations between Officer Neff and Russell at the police station, was not included in the record on appeal. Consequently, although considered by the district court in making its ruling, this transcript was not provided to us for our review of the district court's decision. In our evaluation of whether there was substantial competent evidence to support the district court's finding of fact and conclusion of law that Russell's refusal to take the breath test was unreasonable, we do not have access to that critical documentary evidence that was considered by the district court.

This omission by Russell is consequential. First, as mentioned earlier, Russell bears the burden to show his suspension should be set aside. See K.S.A. 2020 Supp. 8-1020(q). Second: "'It is well-settled that the burden is on a party to designate a record sufficient to present its points to the appellate court and to establish its claims.' [Citation omitted.]" *Southwestern Bell Telephone Co. v. Beachner Constr. Co., Inc.*, 289 Kan. 1262, 1275, 221 P.3d 588 (2009). "When facts are necessary to an argument, the record must supply those facts and a party relying on those facts must provide an appellate court with a specific citation to the point in the record where the fact can be verified. See Supreme Court Rule 6.02(a)(4)." *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013).

The verbatim conversations between Officer Neff and Russell are important to resolving the issue that Russell presents on appeal. As discussed later, although Russell did not respond when Officer Neff asked him if he would take the breath test, there was evidence that after being given the *Miranda* warnings and the implied consent advisories,

9

Russell responded to some of Officer Neff's requests and questions. This suggests that rather than simply invoking his right to silence when asked if he would consent to the breath test, Russell was, in fact, refusing the test.

Without a designated record that shows prejudicial error, an appellate court presumes the action of the district court was proper. *State v. Simmons*, 307 Kan. 38, 43, 405 P.3d 1190 (2017); see also *State v. Miller*, 308 Kan. 1119, 1157, 427 P.3d 907 (2018) ("The burden is on the party making a claim of error to designate facts in the record to support that claim; without such a record, the claim of error fails."). The omission of the transcript, plaintiff's exhibit no. 7, in the record on appeal is fatal to Russell's appeal. Accordingly, we presume the district court's ruling was proper and Russell's claim of error fails.

Despite the ambiguity in Russell's argument and his submission of an incomplete record on appeal, we will address Russell's argument within the limitations just discussed.

Generally, an arresting officer is required to substantially comply with the statutory notice provisions in K.S.A. 2018 Supp. 8-1001. "To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute." *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988).

> "The essentials, i.e., the purpose, of the implied consent advisories are to inform a driver of the law before his or her submission to a requested test and any potential consequences that may result. Similarly, K.S.A. 2016 Supp. 8-1001(v) explicitly provides that '[t]his act is remedial law and shall be liberally construed to promote public health, safety and welfare.'" *Sandate v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 450, 457-58, 471 P.3d 700 (2020).

Although Russell expressed some objection to Officer Neff informing him of the implied consent advisories, the officer placed the amended DC-70 form in Russell's lap and then read aloud the statutorily required notices under K.S.A. 2018 Supp. 8-1001(c)(1)-(4). Russell does not contest this undisputed fact and the district court properly found that Officer Neff provided Russell with both written and oral advisories as statutorily required. Our court has found an officer's notice to be in substantial compliance with the implied consent statute in a similar situation. See *Fisher v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 421, 430, 471 P.3d 710 (2020) ("[The officer] read the language to Fisher as it appears in the statute. . . . There was not only substantial compliance, there was strict compliance with the statute."), *rev. denied* 313 Kan. 1040 (2021). We find that Officer Neff complied with K.S.A. 2018 Supp. 8-1001(c)(1)-(4) in providing Russell with oral and written statutory advisories, as required.

Russell argues that the advisories were confusing, however, because they were given after he was informed of his *Miranda* rights. Russell asserts the *Miranda* warning informing him that he had the right to remain silent, followed by the recitation of the advisories which informed him of the administrative consequences of refusing or failing the breath test, left him confused about whether he could remain silent in response to Officer Neff's request for consent to a breathalyzer test. As a result, Russell asserts it was reasonable for him to remain silent and refuse to consent to the breath test.

Substantial competent evidence suggests otherwise. First, it is undisputed that when Officer Neff asked Russell to take the evidentiary breath test, Russell never stated that he was invoking his right to remain silent.

Second, the record is conflicting regarding whether Russell was confused and, if so, the reason for his confusion. Russell testified that he was confused because Officer Neff was "telling me I have the right to remain silent, and then he's telling me I have to give him a verbal answer at different times. And I was like, 'What is it?'" On the other

11

hand, Russell testified that his confusion originated from the second advisory which described the administrative penalties for failing to take the test or taking the test and failing it. Russell thought, "So it says if you do or you don't, it's the same penalty." He explained, "It's somewhat common knowledge that, if you refuse, you've got more problems than if you don't. So to hear this saying if you do or you don't, it's the same penalty, it's like, 'Okay. He's an officer of the court. I'll take this . . .—as guidance.'" We pause to note in this regard that K.S.A. 2018 Supp. 8-1001(q) provides: "It shall not be a defense that the person did not understand the written or oral notice authorized by this section."

A reasonable inference from this testimony is that by remaining silent and not consenting to the test, Russell was not invoking his *Miranda* right to remain silent but purposely refusing to consent to taking the evidentiary breath test because he considered the penalties were similar if he refused the test or took it and failed the test. Given this evidentiary basis, Russell was not confused because his *Miranda* rights were provided to him in conjunction with the implied consent advisories. He understood his rights and advisories, and made a purposeful, informed decision to refuse the breathalyzer test.

Third, there was other evidence to suggest that Russell was not confused but purposely refused to take the evidentiary breath test by remaining silent. After being advised of his *Miranda* right to remain silent, Russell made statements to Officer Neff. For example, when Officer Neff informed Russell that he was going to read the advisories and placed the DC-70 form on Russell's lap, Russell said something to the effect that he did not want to. Additionally, Officer Neff testified that after the observation period ended, he asked Russell if he remembered his *Miranda* warnings and Russell nodded affirmatively. Officer Neff told Russell he needed "'a verbal yes'" and Russell responded, "'Yes.'" Although not in the record, during oral argument, defense counsel referenced a conversation between Russell and the officer regarding a drink of water. In summary, it is apparent that—other than when asked to take the evidentiary

12

breath test—Russell did not remain silent but was responsive to Officer Neff on several occasions after being advised of his *Miranda* rights.

Fourth, Russell complied with other requests made by Officer Neff except the officer's request to take the evidentiary breath test. As recounted by defense counsel at the hearing while questioning Officer Neff, "[Y]ou asked him some other questions like 'Hey, would you do me a favor? Would you open your mouth and stick out your tongue?'" Russell complied with this request. This evidence indicates that Russell was compliant regarding other requests, but he was intentionally not compliant when he did not respond to the officer's request for a breath test.

In summary, we find substantial competent evidence in our limited record on appeal to support the district court's findings of fact and law that Russell's silence in response to Officer Neff's request for him to take the breathalyzer test was a refusal to take the test. Moreover, this refusal was not reasonable because Russell was not confused by being informed of his *Miranda* rights prior to receiving the implied consent advisories.

We also find Russell's statutory and caselaw support for his argument lacking. Russell has provided no on-point caselaw in support of the notion that being advised of the *Miranda* right to remain silent prior to being advised of the implied consent advisories is confusing to a driver or requires additional information by the arresting officer at the time a request for an evidentiary breath test is made.

Russell relies primarily on *Standish v. Department of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984), to argue that it was reasonable for him to refuse the breath test because he was confused about the inapplicability of his right to remain silent when a breath test is requested by a police officer. Russell asserts that Officer Neff should have provided him with "post-*Miranda* precautionary advice."

In *Standish*, the Kansas Supreme Court considered whether a driver's initial test refusal could be rescinded by a subsequent consent. Russell asserts the factual circumstances in *Standish* "were almost exactly the same factual circumstances as those confronting [him] and which also serve as the basis for the instant appeal before this Court." We disagree.

In *Standish,* the officer arrested Standish for DUI after he failed a field sobriety test. The officer read Standish the *Miranda* warnings and asked him to take an evidentiary breath test. Standish asked to speak with his attorney first. Standish attempted to telephone his attorney without success. Subsequently, Standish declined the test because he was unable to speak to his attorney. Standish was taken to the county jail and the officer returned to duty. About 15 to 30 minutes later, Standish asked about taking the test but the jailer informed him it was too late. The arresting officer testified that if Standish had changed his mind while he was still in the officer's custody, the officer would have administered the test and would not have sent in a refusal report.

Having determined that Standish refused the test, the KDOR suspended his driving privileges. The district court reversed the suspension, however, finding that Standish's initial refusal was rescinded within a reasonable time. The KDOR appealed, and our Supreme Court held a driver's initial refusal can be rescinded if the subsequent consent meets five factors. 235 Kan. at 902-03. The *Standish* court found Standish "clearly refused to take the test" but the court recognized the officer gave Standish the *Miranda* warnings, then requested a breath test, and "Standish responded by asking to first exercise his just-stated right to counsel." 235 Kan. at 903. The *Standish* court concluded: "This sequence, without any further explanation, was obviously confusing to the accused." 235 Kan. at 903.

In its holding, the *Standish* court held there was "no constitutional right to consult counsel in order to determine whether to submit to the test . . . ." 235 Kan. at 904. Still,

14

our Supreme Court held police officers should give precautionary advice to arrestees regarding their right to counsel and other advisories. Despite finding that Standish refused the breath test and that the right to counsel was not applicable, the *Standish* court held his refusal was reasonable. 235 Kan. at 905.

*Standish* is readily distinguishable from the case on appeal. First, *Standish* related to a driver rescinding his refusal to take an evidentiary breath test. In the case on appeal, Russell never rescinded his refusal.

Second, *Standish* dealt with the Sixth Amendment right to counsel not the Fifth Amendment right to remain silent. Nothing in the *Standish* opinion suggests the court intended for its holding to be expanded by requiring officers investigating DUIs to provide precautionary advice regarding the Fifth Amendment right to remain silent. To the contrary, the *Standish* court noted that "[w]hen a blood test is required under state law, the accused is not entitled to assert the Fifth Amendment privilege against self-incrimination." 235 Kan. at 904. Subsequently, our court has held that a DUI arrestee's silence in response to an officer's testing request constitutes a refusal. See *McRoberts v. Kansas Dept. of Revenue*, 17 Kan. App. 2d 680, Syl. ¶ 2, 843 P.2d 280 (1992); *In re Hamstead*, 11 Kan. App. 2d 527, 529, 729 P.2d 461 (1986).

Third, since *Standish* was decided in 1984, our Supreme Court has not extended its precedent to a driver's right to remain silent upon being asked to consent to an evidentiary breath test. Fourth, in *Standish*, after the driver was advised of the *Miranda* rights—unlike Russell—he was not read any implied consent advisories before the officer asked him to consent to a breathalyzer test.

In summary, Russell has failed to show any legal precedent that required Officer Neff to provide him with "post-*Miranda* precautionary advice" regarding the right to remain silent. As the district court found:

"Miranda is an issue of Fifth Amendment. The Fifth Amendment issues are not applicable when it comes to the testing; therefore, the plaintiff, Mr. Russell, could have submitted to the testing and remained silent. Could have nodded his head. Could've extended his arm for whatever equipment was necessary. He could have exercised both— could've remained silent and submitted to the test."

The district court did not err in its legal conclusion.

Alternatively, Russell claims his test refusal was reasonable because Officer Neff failed to substantially comply with the implied consent advisories when, by advising Russell of his *Miranda* rights, he "supplement[ed] that notice with misleading, contradictory and confusing information." In response, the KDOR contends *Miranda* warnings "were neither gratuitous nor incorrect" because the warnings "are necessary information that must be given to arrestees."

This argument may be dealt with summarily. We have held that "if the officer provides gratuitous information concerning the non-mandated notice, the officer must provide a correct statement of the law. If any gratuitously provided information is incorrect, the driver must still demonstrate prejudice to prove reversible error." *Cuthbertson v. Kansas Dept. of Revenue*, 42 Kan. App. 2d 1049, Syl. ¶ 4, 220 P.3d 379 (2009).

Of course, the giving of *Miranda* rights to a driver arrested for DUI is not gratuitous. See *Standish*, 235 Kan. at 904 ("But as soon as the suspect is arrested . . . the *Miranda* safeguards become applicable and the warnings must be given. [The officer] followed the proper procedure in giving . . . the *Miranda* warnings as soon as Standish was substantially detained, arrested, or in custody."). It is undisputed that Officer Neff correctly informed Russell of the standard *Miranda* rights. There is no allegation the officer omitted, misstated, or added any language to those well-known rights. Even assuming that Russell's characterization of the *Miranda* rights as "gratuitous" is accurate,

16

the undisputed evidence is that Officer Neff provided Russell with a correct statement of the law. This argument lacks merit.

Finally, Russell argues that an officer requesting a test is "seeking . . . a verbal response" that is "[c]ommunicative" if the driver's response "provides evidence of the very crime being investigated." Because communicative testimony is protected by the Fifth Amendment right to remain silent, Russell argues his refusal by silence was reasonable.

Preliminarily, this issue is not appropriate for appellate review. Our appellate rules require that every issue in an appellant's brief must begin with "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court." Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36). Russell has not favored us with a pinpoint reference to the record or explained why we should consider the issue for the first time on appeal. Moreover, we are unable to find where this specific issue was argued and ruled upon in our review of Russell's petition, the transcripts of the two hearings held in this case, and the district court's rulings.

Generally, issues not raised before the district court may not be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are three exceptions to this rule but Russell has not claimed any exception. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Our Supreme Court has warned that Supreme Court Rule 6.02(a)(5) will be strictly enforced, and litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). We conclude this issue is waived or abandoned.

17

For the sake of completeness, however, we will consider Russell's argument. In *Schmerber v. California*, 384 U.S. 757, 764, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), the United States Supreme Court found that communicative testimony—not real or physical evidence—is protected by the Fifth Amendment. The Court held that the taking of blood samples to determine intoxication was real evidence and not communicative testimony. 384 U.S. at 764-65. In *State v. Leroy*, 15 Kan. App. 2d 68, 71, 803 P.2d 577 (1990), our court relied on *Schmerber* in concluding that a refusal to submit to a breath test was not a communicative statement and, thus, was not protected by the Fifth Amendment.

Nevertheless, Russell argues his refusal to take the breath test was reasonable because his verbal response, itself, would be communicative testimony protected by the Fifth Amendment. The United States Supreme Court considered the issue in *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990). In a pertinent footnote the Supreme Court observed:

> "Muniz does not and cannot challenge the introduction into evidence of his refusal to submit to the breathalyzer test. In *South Dakota v. Neville*, 459 U.S. 553, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983), we held that since submission to a blood test could itself be compelled, see *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), a State's decision to permit a suspect to refuse to take the test but then to comment upon that refusal at trial did not 'compel' the suspect to incriminate himself and hence did not violate the privilege. *Neville*, 459 U.S. 562-64. We see no reason to distinguish between chemical blood tests and breathalyzer tests for these purposes. [Citation omitted.]" *Muniz*, 496 U.S. at 604 n.19.

Relying on *Muniz*, our court also rejected this argument in *State v. Wahweotten*, 36 Kan. App. 2d 568, 581, 143 P.3d 58 (2006):

> "The United States Supreme Court has made clear, however, that not every spoken statement or communication is protected by the Fifth Amendment privilege against self-incrimination. For example, in *Schmerber*, the Court indicated that the Fifth

18

Amendment privilege is a bar against '*compelling* "communications" or testimony.' (Emphasis added.) 384 U.S. at 764. In *South Dakota v. Neville*, 459 U.S. 553, 564, 74 L. Ed. 2d 748, 103 S. Ct. 916 (1983), the United States Supreme Court held that 'a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination.' The Court recognized that a refusal to take the test can take various forms, including spoken words from the suspect. Nevertheless, the Court indicated that because there is no impermissible form of coercion involved when a suspect refuses to take a test, no Fifth Amendment privilege is implicated."

See also *State v. Bishop,* 264 Kan. 717, 723-24, 957 P.2d 369 (1998) ("'Based on *Miranda* and its progeny, it is clear that [the officer's] request that defendant submit to a breath test did not qualify as custodial interrogation. Because the taking of physical evidence to determine intoxication does not classify as custodial interrogation, defendant's Fifth Amendment privileges were not invoked' . . . . [Citation omitted.]").

United States Supreme Court and Kansas appellate court precedent is dispositive of this issue. Officer Neff was not seeking communicative testimony protected by the Fifth Amendment right to remain silent when he asked Russell to submit to an evidentiary breath test. Accordingly, Russell's refusal on this basis was not reasonable.

Affirmed.